PURCHASE W. HILLIER v. MARY ELDRED.

*Agency—Sufficiency of proof.*

Plaintiff sued to recover the balance due on a contract for building a barn on defendant's farm, made with her son, upon the theory that he was acting as her agent. The only testimony offered by the plaintiff to charge the defendant under the contract was that she owned the farm and the personal property thereon, boarded the men during the building of the barn, and urged plaintiff to hurry up the work, as they wanted to put hay in the barn; which is held no evidence that the contract was made for defendant by her son, which fact she and her son both expressly denied.

Error to Branch. (Loveridge, J.) Submitted on briefs March 10, 1892. Decided March 18, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Campbell & Johnson,* for appellant.

*L. F. Humphrey* and *E. E. Palmer,* for plaintiff.

LONG, J. This action was brought in justice's court to recover the sum of $45, balance due on a contract for building a barn upon defendant's farm. Plaintiff had judgment for the amount of his claim.

The defendant is a married woman, the owner of the farm upon which the barn was built, as well as the other property situate thereon. The contract, as claimed by the plaintiff, was made with the defendant through her son, George Eldred. The defense was that Mrs. Eldred never employed the plaintiff to build the barn, and that the contract was made by her son, George Eldred.

The defendant testified that she never gave her son

any directions for making the contract, and never authorized him or her husband to make the contract for her or in her name. Mrs. Eldred and her husband lived upon the farm. The son was not living at home. He testified that he bought the frame of the barn from a Mrs. Cutter, hired it taken down, and removed it to his mother's farm, expecting to erect it there and make her a present of it; that he met the plaintiff, and told him he had bought the frame, and wanted him to put it up on his mother's farm; that he made the contract with the plaintiff; that he was not acting for his mother in making the contract; that he sent money to the plaintiff to pay for the building of the barn, and received letters from him relating to it; that in the first letter the plaintiff said he had got the job done, except siding up the outside of the granary, and he inclosed the bill of the amount owed him; that he (the witness) received another letter from the plaintiff while in Ohio, asking for his pay.

Notwithstanding the claim made by the plaintiff, that his contract was made with Mary Eldred, he testified upon his cross-examination as follows:

"*Q.* When you made that contract with George Eldred, whom did you expect to do the work for?

"*A.* I supposed I was making the contract with his parents. I didn't suppose there was any difference.

"*Q.* Which one of the two did you intend to make the contract with?

"*A.* I expected to make the contract with Mr. Eldred through George,—with Giles Eldred through George. That is the way I understood it, and that is the way I understand it now; and, with that understanding, I went ahead and did the work.

"*Q.* Whom did you look to for pay?

"*A.* Mr. Giles Eldred.

"*Q.* All the time?

"*A.* Yes, sir."

The only testimony offered by the plaintiff by which it was sought to charge the defendant under this contract is that she owned the farm and the personal property there, boarded the hands during the building of the barn, and that during the time of its building Mrs. Eldred urged him along with it, as she said they wanted it to put hay in. There was no testimony showing or tending to show that any contract was ever made with her, or that she ever paid a dollar upon the contract, or ever agreed to pay a dollar upon it, excepting that the plaintiff, upon his re-examination by his own counsel, when asked why he sued this woman, stated that he understood that the son and husband were acting as the agents of Mrs. Eldred, and that he would not have done the work had he not so understood it.

Defendant's counsel requested the court to charge the jury that—

"The plaintiff has failed to establish any contract relation with the defendant in relation to the barn, and your verdict must be for the defendant."

The court refused this, and stated: "I have serious doubt, but I think I will let it go to the jury." The court thereupon charged the jury, in substance, that, if they found that Mr. Eldred was acting as the agent of his wife in making this contract, the plaintiff would have a right to recover. There was no testimony in the case authorizing this charge; but, on the contrary, the testimony of even the plaintiff himself, upon his cross-examination, shows that he made the contract either with George or Giles Eldred, and that he looked to Giles Eldred for his pay. The mere fact that Mrs. Eldred owned the farm and other property there, boarded the hands, and urged the work on, is no evidence that the contract was made for her, either by her son or husband; and she and

her son, George, expressly deny that any such agency was intended to be created. *Newcomb v. Andrews*, 41 Mich. 518; *Willard v. Magoon*, 30 Id. 272.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.