## POPP *v.* CONNERY.

MARRIED WOMEN — BUILDING CONTRACTS — AGENCY OF HUSBAND.
Where buildings are erected on the land of a married woman, with her knowledge and consent, out of materials selected by her, she is liable for the value of the materials furnished, though the business was conducted mainly by her husband, and the furnisher supposed he was furnishing her husband and that the title to the land was in him, and no misrepresentations were made.

Error to Saginaw; Beach, J. Submitted October 5, 1904. (Docket No. 11.) Decided October 26, 1904.

Assumpsit by John Popp and Joseph F. Wolf, copartners as Popp & Wolf, against Christina Connery for goods sold and delivered. There was judgment for defendant on a verdict directed by the court, and plaintiffs bring error. Reversed.

The defendant was erecting some houses on some lots owned by her. The contracts for their construction were made mainly by her husband in his own name. The business was mainly conducted by him, though she frequently gave instructions. The circumstances surrounding the construction of the buildings are fully stated in *Brand* v. *Connery*, 132 Mich. 88. Plaintiffs sold a bill of hardware for use in the construction of the houses. Her husband made the contract with plaintiffs. The goods were charged to him in the belief ( though the husband made no representation of ownership ) that the land was owned by him. By direction of the husband plaintiffs sent samples to the home of Mr. and Mrs. Connery for her selection. She selected them, and the price was agreed upon. The husband became insolvent and unable to pay. Plaintiffs, upon learning that the title was in defendant, then charged the goods to her, and, upon her refusal to pay, brought this suit. The court directed a verdict for the defendant.

*Eugene Wilber*, for appellants.

*James H. Davitt*, for appellee.

GRANT, J. (*after stating the facts*).  The sole basis
for recovery is stated by plaintiffs' counsel to be the fact
"that the defendant owned the land, that she knew the
buildings were to be erected, that she wanted them built,
that she selected the materials, that they were taken to
her home expressly that she might make the selections,
that she agreed upon the prices, that she gave directions
to the architect and builders, and that by the erection of
these dwellings the value of her land was increased from
$1,000 to $10,000."   Plaintiffs rely upon *Frolich* v. *Car-
roll*, 127 Mich. 561, and the authorities there cited.   De-
fendant's counsel rely upon *Holmes* v. *Bronson*, 43 Mich.
562, *Morrison* v. *Berry*, 42 Mich. 389, *Hillier* v. *Eldred*,
91 Mich. 54, and other similar cases.

In *Holmes* v. *Bronson* a furnace was sold to the hus-
band and placed in his wife's house.   The husband gave
his note for the purchase price, paid a part of the princi-
pal and interest, and obtained several renewals.   After
the last renewal, learning that the title to the land was in
the wife, the plaintiffs returned the husband's note and
sued the wife.

In *Morrison* v. *Berry* the husband bought a gas ma-
chine, which was attached to the house owned by the
wife, on representation that he owned the house.   Upon
learning that the representation was false, the vendors
tendered back the note which the husband had given, de-
manded possession of the machine, and, upon refusal,
brought an action of trover.   The majority of the court
held that the action could not be maintained, for the rea-
son that there was no evidence to show that Mrs. Morrison
had any knowledge of even the existence of a contract,
or that she did any act whatever to afford any ground of
action against her.   Justice COOLEY dissented.

In *Hillier* v. *Eldred* a son bought a frame of a barn to
put up on his mother's homestead, intending to make her
a present of it.

In *Frolich* v. *Carroll* the contract to erect houses upon the wife's land was made by her husband. The contractor testified that he signed the contract upon the representation that the husband owned the premises. The chief difference between that case and this lies in the fact that Mr. Connery made no express representation as to the title. It was claimed there, as here, that there was not a scintilla of evidence to show any contract with the wife. The court found that the contract was in fact made on behalf of the wife, and in sustaining the conclusion of the court below we said:

" Margaret Carroll owned the land, she knew the buildings were to be erected thereon, she wanted them built, she used funds of her own and borrowed more to pay upon the contract, she drew her own personal checks to the complainant and other contractors, and she still owns the premises. She thereby recognized the contract as hers. The case is like any other case of contract made by an agent where the principal is undisclosed"—citing authorities.

It is clear from this record that the husband was making no presents to his wife. He was attending to her business in the same manner as any husband under like circumstances would attend to his wife's business. She knew he was doing this for her. While she did not herself make the application for the articles furnished by plaintiffs, she was present when the contract was made. She knew it was being done for her benefit, and to increase her property. Neither she nor her husband were produced as witnesses. Her husband was not purchasing a single article, like a gas machine or a furnace, but was purchasing materials to be used in the construction of her houses, and she knew that he was doing so. We think the case falls within the principle of *Frolich* v. *Carroll*, instead of the other cases above cited.

Judgment reversed, and new trial ordered.

The other Justices concurred.