*In re* STROEBEL.

APPEAL OF RUNGE.

1. INSANE PERSONS—DISCHARGE OF GUARDIAN—EVIDENCE—DIRECT-ED VERDICT.

On appeal by a daughter of petitioner to the circuit court from an order of the probate court discharging petitioner, who had previously been adjudged an incompetent, from guardianship, *held*, the testimony justified the direction of a verdict for petitioner.

2. SAME—EVIDENCE—OPINION EVIDENCE.

Where a grandson of petitioner, who had formerly lived in her family, was asked whether he deemed her mentally competent to have charge of her affairs, the answer was properly excluded where the witness had detailed nothing upon which he could base an opinion that she was not mentally competent.

3. APPEAL AND ERROR—INSANE PERSONS—REVIEW—WRIT OF ERROR.

On appeal to the circuit court from an order of the probate court discharging petitioner, who had previously been adjudged an incompetent, from guardianship, the issues of fact are triable by a jury, and the proceedings therein, being in conformity with the rules of the common law, are reviewable in this court by writ of error.

Error to Berrien; Bridgman, J. Submitted October 23, 1916. (Docket No. 64.) Decided March 29, 1917.

Petition in probate court by Maria Ann Stroebel praying to be relieved of guardianship. From an order granting the prayer of the petition Josephine Runge, daughter of petitioner, appealed to the circuit court. Judgment for petitioner on a directed verdict. Contestant brings error. Affirmed.

*Gore & Harvey,* for appellant.

*O'Hara & O'Hara,* for appellee.

BIRD, J. Maria Ann Stroebel, the petitioner, who is now 83 years of age, was adjudged incompetent in the year 1909 by the probate court for Berrien county to have the care and management of her person and estate, and a guardian was appointed. In December, 1912, she filed her petition praying to be relieved of guardianship, and an order was made by the probate court granting her prayer and discharging the guardian. One of her daughters, Josephine Runge, feeling herself aggrieved at the order, appealed therefrom to the circuit court. At the conclusion of the testimony the trial court was of the opinion that there was no case for the jury, and a verdict was directed in behalf of the petitioner. The proceedings are here upon writ of error.

1. Did the court err in directing a verdict in behalf of the petitioner? It appears that the petitioner was born in Germany, and came to New York when she was 11 years of age. She worked as a domestic until she met and wed Mr. Stroebel. Soon thereafter they came to Michigan and settled near Niles. Together they made a valuable farm of the land which they purchased. She did not have the opportunity of an early education. Like many German women, she worked in and out of doors. She gave birth to eight children, four of whom are now living, three girls and one boy. The boy, Joe, is with her on the farm, and the girls are married and away. Joe and the girls are not on good terms. The record rather suggests that the cause of the trouble is that Joe wants all of the farm and the girls are afraid he will get it, and not a little of the testimony relates to their troubles. Whether or not this is the "fly in the ointment," the mother should not be made the victim of their selfish quarrels. After examining the testimony with much care, we are convinced that it convicts the petitioner of nothing but the fact of being old, physically infirm,

and not as tidy about her person and home as the present standard of living would suggest. Her testimony was somewhat remarkable for a woman of her age in remembering names, dates, and events, both recent and of long ago. In but one way does her testimony suggest the abnormal. She appears to have developed an unfriendly attitude toward her daughters. This seems to have been engendered in part by the failure of the girls to give her the help and attention which she thought she ought to have, and a disappointment because all three girls married Protestant husbands, and because one of them gave birth to a child before she was married by a man who afterwards married her sister, and for the further reason that two of them assisted in having a guardian appointed for her in 1909. Whether these and other troubles were adequate to cool the average mother's affection for her own daughters, it evidently affected her in that way, and explains what, if unexplained, might be some evidence of an abnormal state of mind. So far as the testimony goes, she appears to be as competent mentally as she was years ago when she was helping to earn the property. We are of the opinion that the trial court took a proper view of it.

2. Contestant inquired of Joe Davis, the grandson of respondent, who formerly lived in petitioner's family, whether he deemed her mentally competent to have the charge of her affairs. The answer to the question was excluded on the ground that no foundation had been laid. We have read the testimony of this witness, and are impressed that the answer was properly excluded, as he detailed nothing upon which he could base an opinion that she was not mentally competent to have charge of her affairs.

3. It is suggested by petitioner's counsel that these proceedings are not according to the course of the common law, and therefore not reviewable by writ of error.

The phrase "proceedings according to the course of common law" is said to mean:

"That the right of a person to his life, liberty, or property shall not be divested, except by a judicial determination, after due notice, in pursuance of a general law." *Mason* v. *Messenger & May*, 17 Iowa, 261.

Proceedings under the statute can be set in motion only after due notice to the alleged incompetent and those whose interest would be affected thereby. 3 Comp. Laws, § 8709 (3 Comp. Laws 1915, § 13951); *North* v. *Joslin*, 59 Mich. 624, 646 (26 N. W. 810). When an order is made therein, any person aggrieved may appeal therefrom to the circuit court (1 Comp. Laws, § 669 [3 Comp. Laws 1915, § 14145]), and notice thereof shall be given to the adverse party (1 Comp. Laws, § 671 [3 Comp. Laws 1915, § 14153]). And if there is an issue of fact involved a jury may be summoned (1 Comp. Laws, § 673 [3 Comp. Laws 1915, § 14155]), and the trial in the circuit court shall proceed "according to the rules of law" (1 Comp. Laws, § 673), and section 10484, 3 Comp. Laws, provides that:

"Writs of error in civil and criminal cases, upon any final judgment or determination, may issue of course, out of the Supreme Court.  *  *  *." (3 Comp. Laws 1915, § 13736.)

The several steps necessary in these proceedings appear to meet and satisfy the foregoing definition of a proceeding according to the course of the common law, at least where an issue of fact is involved. But, whatever view may be entertained as to the proceedings in the probate court when they reach the circuit court, where issues of fact may be tried by a jury, the proceedings are then in conformity with the rules of the common law. See *Parker* v. *Copland*, 4 Mich. 528. Indeed, if such proceedings could not be removed to this court by writ of error, it would be very difficult

to review the charge of the court as a writ of certiorari inquires only as to whether the procedure has been according to law.

The case of *American Baptist, etc., Union* v. *Peck,* 9 Mich. 445, appears to furnish a reason why we should hold that a writ of error was the proper remedy in these cases. It was there held that:

"Where an appeal has been taken to the circuit court from the decree of the probate court allowing or disallowing a will, and a trial is had, error lies to remove" the case into this court.

It was further said:

"Substantial issues of this kind, when tried in the circuit court, upon pleadings framed in the usual way, are governed by all the analogies attending common-law trials of other civil actions."

Inasmuch as the same issue is involved in these proceedings as is frequently raised in will cases, viz., the mental competency of the alleged incompetent, we think it should be held that the proceedings are analogous to those of the common law.

An examination of the cases will disclose that proceedings similar to these have been removed to this court by both methods, viz., by writ of error and writ of certiorari, but the writ of certiorari has been more often used where the jurisdiction of the probate court has been questioned. We are of the opinion that the case is properly here upon writ of error.

Some other questions are raised concerning the admission and rejection of testimony, but we find nothing in them which merits a reversal of the case.

The judgment of the trial court is affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.