## LESHER *v.* BROSTEAU.

1. HUSBAND AND WIFE — TELEPHONE CONVERSATION CREATED No ENFORCEABLE OBLIGATION AGAINST WIFE'S ESTATE — FRAUDS, STATUTE OF.

   A telephone conversation in which a materialman notified a wife that her husband had ordered lumber, and on completion of the house had agreed to deed the equity therein to secure the lumber bill, to which she agreed, created no legal obligation capable of enforcement.

2. APPEAL AND ERROR—VERDICT SETTLES ISSUES OF FACT.

   If the law offers no barriers to a judgment entered on a verdict settling issues of fact, it should stand.

3. HUSBAND AND WIFE — HUSBAND WIFE'S AGENT IN ORDERING BUILDING MATERIALS.

   In an action by a materialman against a husband and wife for materials furnished for building on lots which the wife took in her own name, or which were taken in their joint names by the entireties, evidence *held*, to support the conclusion of the jury that the wife constituted the husband her agent to work out the plan followed to benefit her estate by ordering said materials.

---

[1]Frauds, Statute of, 27 C. J. §§ 161, 198 (Anno); Husband and Wife, 30 C. J. § 602; [2]Appeal and Error, 4 C. J. § 2834 (Anno); [3]Husband and Wife, 30 C. J. §§ 169, 171, 524, 527.

4. SAME — FRAUDULENT CONVEYANCES — CREDITORS MAY NOT SUE
WIFE FOR HUSBAND'S DEBT.
If a husband, to defraud creditors, caused lots, in which
he was vendee, to be deeded to his wife, the remedy of
the creditors is not to sue the wife for the husband's
debt.

5. SAME—HUSBAND AND WIFE MAY NOT BE PARTNERS.
Husband and wife cannot constitute a copartnership and
may not be held liable as partners.

6. SAME—HUSBAND MAY ACT AS WIFE'S AGENT IN CONDUCTING
HER SEPARATE BUSINESS.
A wife may, with the husband's consent, conduct business
on her own account, and the husband may act as her
agent and assist in conducting such business.

7. SAME—WHEN WIFE LIABLE FOR MATERIALS.
If a wife wanted certain houses built for her benefit, knew
they were erected with lumber purchased on credit, and
planned to have the title taken in her name or by the
entireties, then she is liable for the value of the materials
so furnished, although the business was conducted by the
husband, and the materialman was led to believe title
would be in the husband and entered the charges against
him.

8. SAME.
A wife is not liable for the husband's debt.

9. SAME—NO JOINT LIABILITY — WIFE LIABLE IF HER SEPARATE
ESTATE BENEFITED—COMMINGLING ESTATES.
In an action against a husband and wife jointly for
materials furnished for building on lots which the wife
took in her own name or which were deeded to them
jointly, if the debt, in whole or in part, is adjudged to be
that of the wife, contracted in her behalf by the husband
as her agent, the judgment therefor must be against her
alone and not jointly with the husband, and since the
wife cannot be held liable except for materials furnished
with reference to her separate estate, there can be no

[4]Husband and Wife, 30 C. J. §§ 555 (Anno), 620 (Anno);
62 L. R. A. 374; 13 R. C. L. 1172; 3 R. C. L. Supp. 126; 6 R.
C. L. Supp. 780; [5]Id., 30 C. J. § 259; 20 A. L. R. 1304; 38 A.
L. R. 1264; 13 R. C. L. 1368; 3 R. C. L. Supp. 142; 4 R. C. L.
Supp. 858; 6 R. C. L. Supp. 785; [6]Id., 30 C. J. §§ 387, 388½, 392;
[7]Id., 30 C. J. §§ 392, 616; [8]Id., 30 C. J. § 555; [9]Id., 30 C. J. §§ 392,
547, 562, 616, 618 (Anno), 808 (Anno).

joint liability on the theory of a commingling of her property with that of his.

10. SAME—BURDEN OF PROOF TO SHOW WIFE'S LIABILITY.
 The burden of proof was on the materialman to show what materials, if any, were purchased in behalf of the separate estate of the wife.

11. SAME—COMMINGLING OF ESTATES—ESTOPPEL.
 A commingling of the wife's separate estate with that of the husband, *held*, not to estop her from claiming that she was liable only to the extent that her separate estate was benefited, as shown by plaintiff's testimony.

12. SAME—ESTOPPEL.
 Liability of married women may not be established by application of the rule of estoppel.

Error to Wayne; Webster (Clyde I.), J. Submitted January 4, 1927. (Docket No. 3.) Decided April 1, 1927.

Assumpsit by Charles D. Lesher against Martin Brosteau and another for goods sold and delivered. Judgment for plaintiff. Defendants bring error. Reversed.

*Barbour & Martin,* for appellants.
*Wurzer & Wurzer,* for appellee.

WIEST, J. This is a suit in assumpsit, with declaration on the common counts, to recover for lumber furnished for the building of dwelling houses. Defendant Hattie Brosteau, under plea of the general issue, gave notice of payment and coverture with claim that the materials furnished were not for her separate estate. Martin Brosteau, her husband, gave notice of payment and claim of set-off based on discount percentages. Trial was had before a jury, with verdict for plaintiff for his full claim against both defendants. Defendants review by writ of error.

[10]Husband and Wife, 30 C. J. § 494 (Anno); [11]Id., 30 C. J. §§ 402, 486; [12]Id., 30 C. J. §§ 402, 485.

Motions for a directed verdict in favor of Hattie Brosteau and error assigned on instructions to the jury present the questions requiring opinion. Defendants are husband and wife, and, judging from their disclosed acts, they adopted the scheme of having the husband purchase vacant lots under unrecorded "builders' contracts," obtain credit for building material in the name of the husband on the strength thereof, erect dwellings thereon and then take title in the name of the wife or in the names of the husband and wife by the entireties, then mortgage and pay bills in part from the avails or from their joint bank account. It is claimed by defendants that titles were taken in the name of the wife to secure her for moneys she loaned her husband. This explanation evidently did not appeal to the jury, and we need but say there was occasion for taking it *cum grano salis*. The little money inherited by Hattie Brosteau from her mother's estate became too attenuated when considered with reference to the many instances where titles were so taken and lumber bills aggregating upwards of $45,000 were contracted. Of course, there were repeated turnovers, as houses, when built, were mortgaged and sold, but lumber bills were not always paid, and we note two places acquired by the wife out of the dealings and held by her, and also their residence in their joint names worth about $15,000, subject to a mortgage of $4,800. Mr. Brosteau testified:

"I am living there now. I got the money to build the house from the profits of the business and a $4,800 mortgage. Some money from the joint bank account, maybe $300 or $400."

Plaintiff's bill for lumber in this house amounted to $2,190.75, none of which has been paid. When lumber was wanted for this house plaintiff claims he took the matter up with Mrs. Brosteau over the telephone, explained to her that Mr. Brosteau wanted

lumber, and at the completion of the house agreed to deed the equity therein to plaintiff to secure the lumber bills due, and that Mrs. Brosteau stated it was all right with her.    Mrs. Brosteau denied having any such conversation.    The talk, if had, created no legal obligation capable of enforcement, but was offered upon the subject of knowledge by the wife of what the husband was doing in her behalf and of approval thereof by her.    We omit further quotations from the evidence.    Sharp drawn questions of fact were presented to the jury, and the verdict has settled the issues thereon.    If the law offers no barriers the judgment ought to stand.

The jury evidently found that the scheme employed by both defendants, with the husband active and the wife in shadow taking the fruits, was a studied plan to defeat creditors.    We keep in mind that this is not an action in tort but upon contract.    The evidence supports the conclusion that to benefit her separate estate, at the expense of plaintiff, the wife constituted the husband her agent, at least for a part of the dealings, and he actively worked out the result they now seek to have stand under shield of the law of coverture and holdings by the entireties.

At this point we will state what cannot be done.    If the husband, in order to defraud his creditors, caused vendors in his land contracts to deed to his wife, then remedy of the creditor is not to sue the wife for the debt of the husband.    Defendants are husband and wife and may not be held liable as partners.    Husband and wife cannot constitute a copartnership.    *Artman* v. *Ferguson,* 73 Mich. 146 (2 L. R. A. 343, 16 Am. St. Rep. 572) ; *Tomkovich* v. *Mistevich,* 222 Mich. 425, 430.    The wife, however, may, with the husband's consent, conduct business on her own account.    *Tillman* v. *Shackleton,* 15 Mich. 447 (93 Am. Dec. 198)'; *Rankin* v. *West,* 25 Mich. 195; *Root* v. *Root,* 164

Mich. 638 (32 L. R. A. [N. S.] 837, Ann. Cas. 1912B, 740). And the husband may act as her agent and actively assist in conducting such business. *Rankin* v. *West, supra; First Commercial Bank* v. *Newton,* 117 Mich. 433. If the wife wanted the houses built for her benefit, knew they were erected with lumber purchased from plaintiff on credit and planned to have title taken in her name or by the entireties, then she is liable for the value of materials so furnished, though the business was conducted by her husband and plaintiff was led to believe title was or would be in the husband and entered the charges against him. *Frolich* v. *Carroll,* 127 Mich. 561; *Popp* v. *Connery,* 138 Mich. 84 (110 Am. St. Rep. 304). The liability of Hattie Brosteau depended upon the contracts for materials made by her husband and involved the question of his agency for her in a business she was carrying on for the benefit of her personal estate.

The wife is not liable for the debt, if any, of her husband. If the debt, in whole or in part, is adjudged to be that of the wife, contracted in her behalf by the husband as her agent, the judgment therefor must be against her alone and not jointly with her husband. Plaintiff must establish liability where it belongs. Judgment passed against both defendants for the full amount of plaintiff's claim, and, unless based upon a finding that all business, including repairing and journeyman work, was by the husband as agent for the wife, she is not personally liable for all.

Having stated the rule of applicable law we will examine the instructions to the jury. The trial judge instructed the jury:

"So that it has got down to a very narrow point when the property of a married woman can be liable and to justify this, as I have said, you must find that to her knowledge the lumber was furnished for the benefit of her separate property and that is the only way

she can be liable under this theory that I am discussing now.    She cannot be liable for any other property that went for any other property, even if she did consent to pay for it.    Under this theory she can only be liable if she consented to pay for lumber that actually went to build a house on some property that she actually owned herself, she knew it was going to be furnished and consented to it and agreed to pay for it and it actually did benefit her separate property."

This instruction covered one theory of the plaintiff, and we do not understand that defendants complain of this.

The court further instructed the jury:

"If you are satisfied that this husband, the defendant, was in the business of buying lots and building houses and selling them and he and his wife entered into an agreement, an arrangement, that is, the wife was a party to it, that to protect him in this business that he was engaged in, to prevent, perhaps, creditors getting hold of some of this property, that would be used in this business, in case there was trouble or reverses, a plan or scheme of conducting the business was worked out between them and with the wife's full knowledge the husband carries on the business in this way, that he takes title to the lots in her name and he takes title to the lots in their joint names, he puts the bank account in her name and in their joint names, he does various acts from which you may decide that that was the way he was doing business. What for?    To escape paying his bills, if the occasion arose, and the wife becomes a party to that plan.    You see the difference between this theory, now, and the other theory—she becomes a party to that scheme or plan of conducting the business, then there is a great question whether that is her separate estate or not. Then there is a question arises whether the title that is in her name to any particular lot is her really separate estate, honest and truly separate estate, or whether it is just taken that way in order that this plan of conducting the business may be carried out.    *    *    *    If you are satisfied, in other words that this was a method of doing business, that

various lots were taken in her name and in their joint names, for the purpose of escaping liability at some future time, and that future time did come, and you believe that in this case, that is what they are attempting to do, a scheme worked by both of them, to which the wife is a party, then I do not believe under those particular circumstances, if you find from the testimony that that is the state of facts that existed, I do not believe that she is entitled to this protection that goes to a married woman, and under those circumstances I believe that the verdict may be against both of them. In other words, if she has some property that comes to her from her mother and is her legitimate separate estate, and she consents to commingle that with assets of her husband in such a way that they cannot afterwards be separated, and she consents to put in her separate estate and commingle that, and consents that the business be conducted in this manner, in taking title in her name and in their joint names, etc., under those circumstances, I say, I believe she loses the benefit of the protection of the married women's act, and upon an indebtedness that actually went into this business conducted in this way, afterwards the title being taken in her name alone on the properties that were involved in the conducting of the business, the liability may attach."

Also:

"If the defendants by their joint acts and course of dealings have so commingled their estates and assets and their liabilities that they cannot be separated they are estopped from demanding that plaintiff should so separate them for their benefit."

It is apparent from what we have said that the instructions, last above quoted, were erroneous. Plaintiff's case rests upon contract, express or implied, and the disability of the wife to contract, except with reference to her personal estate, may not be turned into a liability on the theory of a commingling of her property with that of her husband.

As stated in *Kvedera* v. *Mondravitzky*, 145 Md. 260-265 (125 Atl. 591):

"To bind Margaret Kvedera, the wife, it was not only necessary to have shown that the defendant entered into the contract mentioned with the plaintiff, but that it, made in his name, was executed by him for both himself and wife as the owner of the property upon which the improvements were to be made, and that he was, either expressly or impliedly, authorized by her to make such contract for and on her behalf as her agent; or that, after the contract was made, though made at the time without her authority, it was by her subsequent conduct ratified by her as having been made by him as her agent."

Upon no theory can there be a joint liability of defendants. If the wife is liable for the materials then the husband is not. In any event the wife cannot be held liable, except for materials furnished with reference to her separate estate. The burden rested upon the plaintiff to show what materials, if any, were purchased in behalf of the separate estate of the wife, and the court was in error in charging the jury that

"if the defendants by their joint acts and course of dealings have so commingled their estates and assets and their liabilities that they cannot be separated they are estopped from demanding that plaintiff should so separate them for their benefit."

Liability of a married woman may not be established by an application of the rule of estoppel. The issues called for liberality in the admission of evidence, and we find no reversible error upon rulings relating thereto.

For the errors pointed out we are constrained to reverse the judgment and grant a new trial, with costs to defendants.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred. BIRD, J., did not sit.