VIRGINIAN JOINT STOCK LAND BANK OF CHARLESTON *v.* HUDSON.

1. MORTGAGES—EXTENSION OF PERIOD OF REDEMPTION.

   The court may grant extension of period of redemption under emergency mortgage moratorium act only on finding of equitable reasons therefor and upon imposition of reasonable conditions (Act No. 98, Pub. Acts 1933).

   Per NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ.

2. SAME—EQUALLY DIVIDED COURT.

   Order made pursuant to emergency mortgage moratorium act, revoking previous order confirming sale under mortgage foreclosure, extending period of redemption, and ordering payment of costs, interest and taxes, is affirmed by an equally divided court (Act No. 98, Pub. Acts 1933).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 18, 1934. (Docket No. 58, Calendar No. 37,520.) Decided April 3, 1934.

Bill by Virginian Joint Stock Land Bank of Charleston, a foreign corporation, against Grant M. Hudson to foreclose a mortgage. From order revoking confirmation of sale and extending period of redemption to October 1, 1934, plaintiff appeals. Affirmed by an equally divided court.

*Brown & Gregg* (*H. W. Glassen,* of counsel), for plaintiff.

*Carl H. McLean* (*Fred L. Warner,* of counsel), for defendant.

FEAD, J. (*for reversal*). This is appeal by plaintiff from an order made under Act No. 98, Pub. Acts 1933, the emergency moratorium law.

The mortgage was given July 10, 1925, for $7,000, payable $245 semi-annually. Defendant was a widower at the time. The last payment of principal or interest on the mortgage was made May 3, 1930. The next payment was due November 3d. The foreclosure bill was filed February 24, 1932, more than a year after default. *Pro confesso* decree was entered August 8, 1932, for $7,735.57. Sale was advertised for October 15th.

October 15th defendant filed motion to vacate the decree on the grounds of defective service of process on him because the original summons was not exhibited to him; usury; that his present wife was not made a party; and other purely technical claims of error in the proceedings; and asked leave to appear and defend. October 27th the court denied the motion but extended the sale time to not earlier than December 17th because of economic conditions. Sale was had December 17th for $3,500. Deficiency decree for $4,451.72 was entered against defendant and order confirming sale was made December 28th.

The redemption period expired June 17, 1933. Act No. 98, Pub. Acts 1933, became effective June 2d. June 7th defendant filed petition praying that the decree, sale and order confirming sale be set aside and the cause continued to March 1, 1935, under the provisions of Act No. 98. The only reason alleged for equitable relief was inadequacy of sale price. In the petition defendant waived right to possession.

August 3d the court entered an order that defendant pay costs of $21.10, pay to the clerk interest of $606.90 from date of order to October 1, 1934, in equal monthly instalments, pay to the clerk taxes

assessed from December 17, 1932, to October 1, 1934, as they become due and payable, and that the order confirming sale be revoked and the period of redemption extended to October 1, 1934, defendant to retain possession of the premises. The extension was not made conditional upon performance by defendant of the provisions of the order.

The oral testimony was that the property is tillable, has no buildings upon it, was worth $12,000 in normal times, was worth $7,200 at the time of foreclosure sale but could not be sold then or now at that price or perhaps any other price. Defendant testified that he bought the land in 1920 for $15,000; that he made no effort to redeem from the foreclosure sale; that he had had negotiations to sell the premises but could not sell because the question was raised of his wife having a dower interest in the premises and he did not know whether she would release her dower in case of sale; the property is easily rented; he has no money to redeem; he has 189 acres of land across the road; he made no attempt to secure any money to redeem because he thought the effort would be useless; he had the benefit of the crops of 1932 but did not pay the taxes for that year. The above testimony was given by way of categorical statements, without explanation or demonstration by circumstances.

In *Russell* v. *Battle Creek Lumber Co.*, 265 Mich. 649, this court sustained the validity of Act No. 98, Pub. Acts 1933, as emergency moratorium legislation, against the claim that it violates the constitutional provision prohibiting laws impairing the obligations of contracts, in so far as it falls within the decision of the supreme court of the United States in *Home Building & Loan Ass'n* v. *Blaisdell*, 290 U. S. 398 (54 Sup. Ct. 231, 88 A. L. R. 1481).

In so doing, this court passed only upon the particular question before it and did not assume to decide issues not there involved. The question was whether the statute is valid in permitting extension of the period of redemption. The same question is involved here. The instant case, however, involves the further questions of the scope of the constitutional power of the court and the manner of its exercise in extending the moratorium relief.

In the *Blaisdell Case,* after holding:

"1. An emergency existed in Minnesota which furnished a proper occasion of the exercise of the reserved power of the State to protect the vital interests of the community. * * *

"2. The legislation was addressed to a legitimate end, that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society,"

the court stated the test of validity:

"3. In view of the nature of the contracts in question—mortgages of unquestionable validity—the relief afforded and justified by the emergency, in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency and could be granted only upon reasonable conditions."

It then proceeded to hold that the conditions upon which the period of redemption was extended were not unreasonable because:

"As already noted, the integrity of the mortgage indebtedness is not impaired; interest continues to run; the validity of the sale and the right of a mortgagee-purchaser to title or to obtain a deficiency judgment, if the mortgagor fails to redeem within the extended period, are maintained; and the conditions of redemption, if redemption there be, stand as

they were under the prior law. The mortgagor during the extended period is not ousted from possession but he must pay the rental value of the premises as ascertained in judicial proceedings and this amount is applied to the carrying of the property and to interest upon the indebtedness. The mortgagee-purchaser during the time that he cannot obtain possession thus is not left without compensation for the withholding of possession."

The gist of the finding of reasonableness in the legislation is in the last sentence quoted. Many times in the opinion the court emphasized that the mortgagee-purchaser obtains compensation for the withholding of possession. And that the court deemed compensation to the mortgagee essential to the validity of the act is clear from its carefully guarded statement that the statute "as here applied" does not violate the Federal Constitution. The Minnesota court had ordered the extension of the period of redemption on payment by the mortgagor of the full rental value of the premises.

Contrary to much lay opinion, the *Blaisdell* decision does not purport to set aside the Constitution and to validate all sorts of legislation because it is given an emergency label. On the contrary, the decision itself is meticulously circumscribed and the final and effective pronouncement is more restricted than some of the argument would seem to permit.

The outstanding propositions elucidated in the case are that both the statute and its administration by the court must be reasonable in order that there be no conflict with the Constitution; that reasonableness is a judicial question; that both the existence and continuance of the emergency are judicial questions; that the relief permitted and afforded must be appropriate to the emergency; and that

compensation to the mortgagee or purchaser for withholding possession is an essential to valid relief.

In some cases the distinction between general equity powers and jurisdiction under the moratorium statute would need to be taken into account. In chancery foreclosures the court has rather broad powers to do equity (*Michigan Trust Co.* v. *Cody,* 264 Mich. 258), while its control of statutory foreclosures under its general powers is limited to fraud or irregularity. *Moss* v. *Keary,* 231 Mich. 295; *Cameron* v. *Adams,* 31 Mich. 426. Of course equity may devise remedies adaptable to an equitable result in each case. But it has no general power to gamble on future values nor to extend the period of redemption provided by statute. When the latter result is sought, the court must plant itself on the moratorium law. In the instant case there is no general equity ground upon which the decree may stand.

In applying the moratorium statute the court has no greater right or authority, by construction or administration, to extend the relief beyond constitutional limits than has the legislature by enactment of the law. The court at all times must keep in mind that the mortgagee is entitled to the full benefit of his contract, including the remedies for its enforcement, and that his right thereto may not be impaired constitutionally except in such measure as the public interests require relief to the mortgagor. It must also be remembered that the law is not a blanket moratorium. It commits the remedy to courts of equity in order that the particular circumstances of each particular case shall be weighed to determine the reasonable relief appropriate to the person as well as consistent with the emergency. Nor does the statute commit a case to the unrestrained discretion

of the court nor provide a new general equity juris-
diction. It attaches specific provisions for com-
pensation to the relief, which are an essential part
of the reasonable conditions sustaining the validity
of the law and without which it would violate the
Constitution.

With these general considerations in mind, we
will turn to an inspection of our statute, a copy of
which is attached for convenience.*

---

* "ACT NO. 98 — PUB. ACTS 1933.

"An act relative to foreclosure of mortgages and deeds of trust,
and to prescribe the effect thereof.
        *The People of the State of Michigan Enact:*

"Emergency clause.

"SECTION 1. An emergency affecting the general credit situation
in the State of Michigan, which requires special and temporary legis-
lation under the police powers of the State, is hereby declared to
exist.

"Real estate mortgage or deed of trust foreclosure in chancery;
continuance, orders for possession and rentals.

"SEC. 2. In all actions for the foreclosure of real estate mort-
gages or deeds of trust now pending in which decree has not been
entered, and hereafter commenced for the foreclosure of real estate
mortgages or deeds of trust, in any court of record in the State of
Michigan, the court, upon the application of the owner or owners of
such real estate, or persons liable on said mortgages or deeds of trust,
who are defendants in said cause, may from time to time, unless upon
hearing of said application good cause is shown to the contrary, order
such cause continued until not later than March one, nineteen hundred
thirty-five. Upon such order of continuance the court shall make
order or orders for possession of said real estate, giving preference to
the owner or owners in possession, determine fair rental terms to be
paid by the party or parties to be in possession and the application
and/or distribution of the rents, income and profits of said real es-
tate, and make such order or orders for the preservation of said prop-
erty and the payment of taxes and insurance as will be just and
equitable during the continuance of said cause. Such order or orders
shall provide that such rents, income or profits shall be paid to and
distributed by the clerk of the court of the county in which said suit
is pending, or such other person or persons as the court shall name,
and further provide that in such distribution taxable costs of the
proceeding, taxes, insurance, cost of maintenance and upkeep of said
real estate shall be paid in such priority as shall be determined by
the court, and any balance distributed as the court may further direct.
The court may, upon a substantial violation of its said order or
orders, or for other good and sufficient cause, set aside or modify

The order at bar is laid under section 4, which authorizes the court to set aside or amend its order of confirmation of sale and grant delay. The evident purpose of the legislature was to confer jurisdiction upon the court to order resale, at once or within the moratorium period, or to "amend" the order of confirmation by affirming the sale but extending the period of redemption.

said order or continuance and the cause shall forthwith proceed to trial as by law now provided, the provisions of this act to the contrary notwithstanding.

"Real estate mortgage foreclosure by advertisement; transfer to chancery.

"SEC. 3.   Whenever any mortgage is being foreclosed by advertisement, the owner or owners of such real estate or any person or persons liable on said mortgage and note, may file a bill in chancery in the circuit court of the county in which the property is located for the purpose of bringing said foreclosure proceedings under the terms of this act. Thereafter, the court upon proper pleadings, shall proceed to foreclose such mortgage according to law, under the terms and provisions of this act.

"Foreclosure in chancery, setting aside or amendment of order confirming sale.

"SEC. 4.   In any case of mortgage foreclosure now pending in a court of chancery in which the equity of redemption has not expired, the court, upon application of the owner or owners of such real estate or any person or persons liable on said mortgage and note, may set aside or amend its order confirming sale and thereupon may grant such order or orders or continuance as provided in section two of this act.

"Foreclosure by advertisement, orders restraining restitution and providing for rentals.

"SEC. 5.   In the case of any mortgage being foreclosed by advertisement at the time this act becomes effective, in which the equity of redemption has not expired, the mortgagor, owner or owners of such real estate or any person or persons liable on said mortgage and note, may file a bill of complaint in chancery in the circuit court for the county in which the property is located, and the court may issue an order restraining the issuance of a writ of restitution until not later than March one, nineteen hundred thirty-five. The court, in case of the issuance of said order, shall determine fair rental terms to be paid by the owner or owners or the party or parties in possession, and arrange the application and distribution of the rents, income, and profits from said real estate in like manner as provided in section two of this act. The court shall, upon a substantial violation of its order or orders, or for good cause shown set aside or modify said order enjoining issuance of the writ of restitution,

The essentials of the procedure are found in section 2. The court is invested with the discretion to grant delay. The discretion is not a personal power but a judicial jurisdiction. The owner or debtor (whom we will call the mortgagor for convenience) must petition for the delay. Relief may be granted only after hearing. Being the moving party, the mortgagor must allege and prove facts which move the discretion of the court in his behalf. Obviously, to avoid violation of the Constitution, the showing must present a case which demonstrates reasonable grounds, attaching to the mover, for impairing the contract rights of the mortgagee.

Whether the clause, "unless upon hearing of said application good cause is shown to the contrary," casts the burden of proof on the mortgagee, is rather

"Termination of act.
"Sec. 6. From and after the first day of March, nineteen hundred thirty-five, this act shall cease to be in force.

"Immediate necessity.
"Sec. 7. This act, brought forth to meet an emergency through the police power of the State, is hereby declared to be immediately necessary for the preservation of the public peace, health and safety, and to promote and preserve property, and home ownership.

"Mortgages not subject to act.
"Sec. 8. This act shall not apply to any mortgage executed subsequent to February fourteen, nineteen hundred thirty-three.

"Severing clause.
"Sec. 9. If any section, sentence, clause or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses and phrases of this act or the act as an entirety. The legislature hereby declares that it would have passed the act and each section, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, sentences, clauses and phrases would be declared unconstitutional.

"Suspension of conflicting acts.
"Sec. 10. All acts and parts of acts in conflict with this act are suspended while this act is in effect.

"This act is ordered to take immediate effect.
"Approved June 2, 1933."

an academic question because the relief is discretionary. The statute provides that the court "may," not "must," grant the relief. It is always the rule that a discretionary act will be sustained unless abuse of discretion is affirmatively shown. The clause does not relieve the mortgagor of the burden of showing right to consideration of the court. At most, it casts the burden on the mortgagee after the mortgagor has made a *prima facie* case.

The character of the showing must depend upon circumstances. Inadequacy of sale price is a factor of relief but, alone, would not justify it. It would be absurd to hold that the legislature intended that a mortgagor with ample cash resources at his command or reasonably able to borrow money and pay his debts is entitled to the delay provided by the statute. The legislature committed the subject to the court of equity so that the mortgagee, as well as the mortgagor, should have proper treatment in the particular case.

The financial standing of the mortgagor, his ability to pay or borrow, the market for land, the state of local and general credit, the opportunity for refinancing, and other considerations enter into the exercise of discretion of the court. In our opinion, an important factor is whether the premises constitute the home or means of living of the mortgagor or are held for speculation. The maintenance of homes, owned by the occupants, is of prime importance to the welfare of the country, and measures for their protection may be so amply justified on the basis of "vital interest to the community" and "basic interest of society" that the courts should be more diligent in their behalf than for the relief of a speculator.

The petition at bar presents only one claim for relief—inadequacy of sale price. Defendant's conduct negatives his right to equitable consideration. His instalment payments on the mortgage were small and he showed no reason for the default. He had the benefit of the land after default and applied none of its earnings to discharge his obligation. He paid no attention to the suit until the day advertised for the sale. Then he sought to defeat the decree by technical objections. He made no effort to obtain money to redeem or to pay the debt nor showing of lack of ability to do so, although he has other property which could have been used to aid in financing. At no time has he offered to compensate plaintiff for delay. When opportunity presented itself for at least negotiations for sale and further negotiations apparently depended upon his wife's dower rights, he did not even ask her whether she would execute a deed. The premises are not defendant's home, and he is not aided by the inference which would attend foreclosure of a home, that dire necessity prevented payment of the mortgage. An extension of time for redemption deprives the mortgagee of the benefit of its contract, prevents its disposing of the property and casts upon it the hazard of future movement in value. The case is one for the showing of equity by defendant, not the presumption of equity from the fact the mortgage has been foreclosed and the land sold at less than its value.

It is contended that the order entered was not in compliance with the statute. The court recognized its duty to determine the rental value, rents, income and profits as provided in the law. It did not do so because counsel for plaintiff urged that compensation to the mortgagee for the delay should take the form of a provision for the payment of taxes and

interest instead of rental value. Plaintiff cannot complain because the court adopted its suggestion.

The order is indefinite in setting up the effect of non-compliance with the conditions by the mortgagor. It is not clear whether, at expiration of the extended period, the court intended the right of redemption to cease or that a resale be had. The legislature committed the machinery of moratorium to the courts without imposing details of procedure upon them. The orders of the courts should be very specific so the parties will not misunderstand or mistake their rights.

The order does not provide a penalty for non-compliance by the mortgagor. Under section 2 the mortgagee may move to set aside the order on default. In some cases it would seem the better practice to make the order self-enforceable by automatic vacation for violation. The order does not provide for distribution of the funds by the clerk. Obviously this was a mere oversight.

The order should be reversed, with costs.

Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred with Fead, J.

Potter, J. (*for affirmance*). July 3, 1925, defendant, then a single man, made, executed and delivered a promissory note in the sum of $7,000 to the Columbus Joint Stock Land Bank of Columbus, Ohio, payable with interest at 6 per cent. per annum, on an amortization plan, in 65 semi-annual instalments of $245 each, and one additional instalment of $204.61. It was provided that if default was made in the payment of any instalment payment, the legal holder of the note might declare the whole debt immediately due and payable. To secure the Columbus Joint Stock Land Bank the payment of the sum of money mentioned in the promissory note,

together with the interest thereon, defendant made, executed and delivered to the Columbus Joint Stock Land Bank a real estate mortgage of even date therewith in the sum of $7,000 covering real estate consisting of a farm of 120 acres in Kalamazoo county. This mortgage was properly acknowledged and recorded. It subsequently became the property of the Virginian Joint Stock Land Bank of Charleston, West Virginia, now the owner thereof. Default was made in the payment both of interest and of principal instalments due upon the mortgage, whereupon plaintiff, February 24, 1932, instituted foreclosure proceedings in the circuit court for Kalamazoo county, claiming the whole amount due upon said note and mortgage as of January 16, 1932, to be $7,316.77. August 8, 1932, a decree of foreclosure was entered and a sale of the premises directed to be made. October 15, 1932, defendant petitioned for a modification of the decree of foreclosure and October 27, 1932, an order was entered modifying the final decree of foreclosure by reducing the attorney fee therein upon conditions mentioned in the decree. December 17, 1932, the mortgaged premises were sold at circuit court commissioner's sale for $3,500, which sale was subsequently confirmed and a deficiency judgment ordered against defendant for $4,451.72. June 7, 1933, defendant filed a petition based upon Act No. 98, Pub. Acts 1933, and an order was made by the trial court that defendant pay to plaintiff within 60 days from and after July 8, 1933, costs in the sum of $21.10; that defendant pay to the clerk of the court $606.90 which represented interest from the date of the order, August 3, 1933, to October 1, 1934, at 6 per cent. on $7,904.02, the amount of principal and interest due as of December 17, 1932, the date of sale, the sum of

$606.90 to be paid to the clerk in equal monthly instalments beginning forthwith and ending October 1, 1934, payments to be made on the first day of each month; that defendant pay to the clerk of the court additional sums of money equal to all taxes assessed against the property between December 17, 1932, and October 1, 1934, as and when such taxes become due and payable; that defendant have the right to retain possession of the property during the extended period of redemption; that the order of December 28, 1932, confirming the sale held December 17, 1932, be revoked and set aside and the period of redemption extended to October 1, 1934.

We are not concerned with the wisdom or policy of the statute nor the motives which led to its adoption. The only question which this court may consider is whether Act No. 98, Pub. Acts 1933, is constitutional or not. Article 1, § 10, Constitution of the United States, provides:

"No State shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or grant any title of nobility."

Act No. 98, Pub. Acts 1933, § 4, provides:

"In any case of mortgage foreclosure now pending in a court of chancery in which the equity of redemption has not expired, the court, upon application of the owner or owners of such real estate or any person or persons liable on said mortgage and note, may set aside or amend its order confirming sale and thereupon may grant such order or orders or continuance as provided in section two of this act."

Act No. 98, Pub. Acts 1933, § 2, provides among other things:

"Upon such order of continuance the court shall make order or orders for possession of said real estate, giving preference to the owner or owners in possession, determine fair rental terms to be paid by the party or parties to be in possession and the application and/or distribution of the rents, income and profits of said real estate, and make such order or orders for the preservation of said property and the payment of taxes and insurance as will be just and equitable during the continuance of said cause. Such order or orders shall provide that such rents, income or profits shall be paid to and distributed by the clerk of the court of the county in which said suit is pending, or such other person or persons as the court shall name, and further provide that in such distribution taxable costs of the proceeding, taxes, insurance, cost of maintenance and upkeep of said real estate shall be paid in such priority as shall be determined by the court, and any balance distributed as the court may further direct. The court may, upon a substantial violation of its said order or orders, or for other good and sufficient cause, set aside or modify said order or continuance and the cause shall forthwith proceed to trial as by law now provided, the provisions of this act to the contrary notwithstanding."

The trial court made no order determining the fair rental terms to be paid by defendant nor for the preservation of the property, nor for insurance upon the buildings thereon, if any, nor for the cost, maintenance and upkeep of the real estate.

The record indicates the finding by the trial court of interest to be paid was made in place of a finding of fair rental terms by consent of the parties, and they should now be bound by such finding. The

statute authorizes the court to extend the time of redemption within the terms thereof upon the application of the owner or owners of the land "unless upon the hearing of said application good cause is shown to the contrary," and no good cause was so shown.

The decree entered July 8, 1933, provides that within 60 days from the date of this order defendant pay plaintiff all costs taxed; that defendant pay the clerk of the court $606.90 which represents the interest from December 17, 1932, to October 1, 1934, at 6 per cent. on $7,904.02, the amount of principal and interest due December 17, 1932, in equal monthly instalments beginning forthwith and ending October 1, 1934, such payments to be made on the first day of each month, and pay to the clerk of the court such additional sums as may equal all taxes levied and assessed against the property between December 17, 1932, and October 1, 1934, such amounts to be so paid as and when such taxes shall become due and payable. If defendant does not comply with this decree the statute provides:

"The court may, upon a substantial violation of its said order or orders, or for other good and sufficient cause, set aside or modify said order or continuance * * * the provisions of this act to the contrary notwithstanding."

It has been suggested the practice under this statute be more clearly defined. The statute governs,— it is clear, and this court by rule may not modify, alter or overrule the statute. *Young* v. *Peters,* 118 Mich. 45.

In *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398 (54 Sup. Ct. 231, 88 A. L. R. 1481), decided January 8, 1934, the supreme court of the United

States upheld the constitutionality of a similar law. The rule in that case should govern this. Decree affirmed, with costs.

NELSON SHARPE, C. J., concurred with POTTER, J.

NORTH, J. (*for affirmance*). I am quite fully in accord with Justice FEAD's interpretation of the statute as applied to the facts herein and the manner in which he states a trial court should apply it; but I cannot agree that this record does not disclose equities existing in defendant's favor. The price bid at the foreclosure sale is clearly inadequate. It is a fair inference from the record that defendant could neither pay nor refinance the mortgage debt at the time the circuit judge granted an extension. The extension affords defendant a possibility of relieving himself either wholly or partially from a deficiency decree which will result from an inadequate sales price. It is within the equitable powers of the court to grant this opportunity. I think it appears from the record that the circuit judge acted within the scope of the statute in fixing the conditions upon which the extension was granted. Except for the pending appeal, the whole matter is still under the control of the circuit judge. No justification for the intervention of this court appears.

Order affirmed.

WIEST, J., concurred with NORTH, J.