JENNINGS *v.* ARNOLD.

1. MORTGAGES—FORECLOSURES—ADVERTISEMENT—NOTICE.

In foreclosure of a mortgage by advertisement under 3 Comp. Laws 1929, § 14427, mortgagors living on the premises are not entitled to actual notice; constructive notice by publication and posting in a conspicuous place on the premises only being necessary.

2. SAME—POSTING OF NOTICE.

Posting notice on stake on high knoll 30 feet from center of highway in front of farm rather than on farmhouse over 300 feet from highway *held*, sufficient to comply with statute as to foreclosure of mortgage by advertisement on farm occupied by mortgagors (3 Comp. Laws 1929, § 14427).

3. SAME—MORATORIUM—EQUITY.

In granting a moratorium as to a mortgage, an important factor is whether the premises constitute a home or means of living for the mortgagors, or are held for speculation, but the subject is now committed to a court of equity where mortgagors are required to do equity as a condition precedent to and continuation of the moratorium (Act No. 98, Pub. Acts 1933).

4. SAME—CONDITION PRECEDENT TO CONTINUATION OF MORATORIUM.

In suit by mortgagors for relief under moratorium statute, where mortgagee had exhausted her resources in paying past-due taxes, as a condition precedent to and continuation of moratorium, plaintiffs who have received large payment from contract vendee are required to pay such past-due taxes as are necessary to avoid mortgagee's loss of security through tax titles becoming absolute and such further sums due mortgagee or for taxes and insurance in excess of value of property as may be necessary to protect her interest and a specified sum per month.

Appeal from Oakland; Doty (Frank L.), J. Submitted July 10, 1935. (Docket No. 127, Calendar No. 37,911.) Decided September 9, 1935.

Bill by Wilbur F. Jennings and wife against Margaret Shoup Arnold to set aside a sheriff's sale and deed, to restrain the issuance of a writ of restitution and other relief. From decree, plaintiffs appeal. Modified and remanded.

*Joseph Jirasek*, for plaintiffs.

*Pelton & McGee*, for defendant.

BUTZEL, J. On January 9, 1912, plaintiffs gave defendant's assignor a mortgage on the 75-acre farm

upon which they lived, in order to secure a note of
$5,000 of even date payable in five years. Subse-
quently upon payment of $1,000, 20 acres were re-
leased from the mortgage. In 1926 plaintiffs sold
the property for $64,000 to a realty company on land
contract upon which $19,000 was paid, thus leaving
$45,000 and interest still due. The realty company,
however, defaulted in its payments to plaintiffs who,
notwithstanding the large amount they had received,
did not pay any taxes on the property since 1927 nor
any interest to defendant since January, 1931, with
the exception of $50 in July of that year. Defendant
was not informed of the payments plaintiffs received
from the realty company although in a discussion in
1926 she expressed her willingness to continue to ex-
tend the time of payment of the principal, provided
the interest was promptly paid. Several years be-
fore the commencement of this suit defendant em-
ployed an attorney to collect the mortgage, but he
was unsuccessful in his efforts. In order to protect
her security, defendant paid $1,977.44 for the past-
due taxes of 1928 and 1929. She also paid some of
the insurance premiums and an additional $62.98 for
taxes. The record indicates that this latter sum was
paid on property not covered by the mortgage but
this question is not raised by the appellants. De-
fendant began foreclosure proceedings by advertise-
ment and on September 12, 1932, the property was
bid in by her for $6,920.29. Plaintiffs claim that they
knew nothing whatsoever of the institution of the
foreclosure proceedings and the subsequent sale
thereunder until March, 1933, when, they admit, they
received two letters informing them of the sale and
that they had until September 12, 1933, almost six
months, in which to redeem. On September 5, 1933,
just seven days prior to the expiration of the equity
of redemption, they filed a bill of complaint in the in-

stant suit, alleging that the foreclosure proceedings were irregular because, as they claim, the notice of sale was not posted in a conspicuous place on the premises as provided by 3 Comp. Laws 1929, § 14427. They also sought the benefit of the moratorium statute, Act No. 98, Pub. Acts 1933. Defendant in her answer claimed that she also was in great financial distress and that unless she could get possession of the property in order to raise necessary funds, she would lose her entire investment on account of the outstanding taxes. Her claims are supported by the testimony.

Shortly after the suit was begun the court ordered plaintiffs to pay defendant the sum of $40, the equivalent of a month's rent for a month beginning with the institution of the suit. The court found that the posting was in a conspicuous place on the premises and conditioned the granting of a moratorium on the payment of the $40 rent for the first month as previously ordered, $15 a month for each subsequent month, and that on or before January 15, 1934, the decree being signed December 26, 1933, plaintiffs pay to defendant for taxes paid by her the further sums of $1,074.12, $924.32 and $62.98, with six per cent. interest from the dates of the respective payments made by her, and the further sum of $720 interest for the three years from January 9, 1931. The court further found that the defendant had been very tolerant and had gone as far as she possibly could without jeopardizing her interest.

Plaintiffs claim that they saw no notice posted in any place whatsoever on the premises, although they were living on the farm with the permission of the contract vendee. One Wilbur W. Clark, who posted the notice, testified that he attached it with two tacks to the top of a stake driven six inches into the ground, the stake standing 15 inches above the

ground about 50 feet west of a fence adjoining a golf course on the Troy road; that he did not post it on the house because he was uncertain as to whether the house was included in the description of the mortgaged property; that if the notice had been posted on the house standing on the premises, it could not have been seen from the highway as it was some 300 feet distant therefrom; that he had posted several hundred notices of foreclosure in the neighborhood and that he made it a practice that if the building was in a conspicuous place, he posted the notice on the building, otherwise near the road where it could be seen; and that if he had placed the notice nearer the house, it would have been on low ground and out of sight. While he admitted that the grass was tall where the stake stood, his testimony was quite emphatic that it was driven in the ground on a high knoll where it was absolutely visible from the highway, and that it was only 30 feet from the center of the highway, from which it could be seen.

The court held that while the manner of posting was not commendable and should not be continued in practice, it did, however, comply with the statute which does not require posting on the house, even if there be one on the premises. The law does not even require actual notice to the plaintiffs, publication and posting in a conspicuous place on the premises only being necessary. *Windisch* v. *Mortgage Security Corp. of America,* 254 Mich. 492. While we are in accord with the judge that it would have been preferable to post the notice on the house and thus all claims of irregularity would have been avoided, nevertheless a notice posted in front of the premises might be more conspicuous than even if posted on a house distant from the road.

Although plaintiffs knew of the foreclosure almost six months prior to the expiration of the equity of

redemption, they waited until almost the last moment before filing their bill. They received a large sum on the contract for the sale of the property, and with the contract as security they possibly might have obtained sufficient funds in payment of their taxes and interest. They paid no attention whatsoever to their obligation to defendant. In *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich. 644, we held that in granting a moratorium, an important factor is whether the premises constitute a home or means of living for the mortgagor, or are held for speculation. However, we also stressed the fact that the legislature committed the subject to a court of equity so that the mortgagee as well as the mortgagor would receive proper consideration in each particular case. The property had been sold by plaintiffs, although they continued to occupy it through the grace of the contract vendee. The testimony tends to show that the mortgagee may lose her entire interest in the property through the mortgagors' failure to pay the taxes as she has exhausted her resources in paying past due taxes and that plaintiffs permitted defendant to carry the entire tax burden and made no effort to pay interest or even pay the $40 rent ordered by the trial judge, who considered the jeopardy in which the defendant's security was placed as well as her financial condition and inability to pay further sums.

The record does not disclose the present value of the property nor is there any showing that plaintiffs have the financial ability to pay the sums ordered by the trial judge as a condition precedent to the granting of a moratorium, he only giving them 20 days from the date of the decree to make such payments. We agree with the trial judge that the defendant's interests have become paramount, that the debt should not be permitted to grow nor the security fur-

ther impaired. While it is true that plaintiffs neglected or failed to make any payments whatsoever, not even the small amount ordered by the court during the pendency of the suit, nevertheless ordering the payment of approximately $3,000 to apply on the mortgage debt within 20 days after the rendition of the decree and without any obligation on the part of defendant to apply any part of such sums, if paid, towards the payment of taxes, defeats the very purpose of the moratorium. Plaintiffs, however, must do equity as a condition precedent to and the continuation of the moratorium. They should be ordered to pay such past-due taxes or installments thereof as may be necessary to avoid all danger of defendant losing the benefit of her security through tax titles becoming absolute in the State or any purchaser, such payments to be made within 30 days after the decree, as modified, is rendered. Further taxes or installments thereof that may hereafter become due should be paid within three months from the last day payment can be made so that absolute tax titles do not accrue in the State or purchasers. If the judge now or hereafter shall find that the amount now due defendant plus the sums that may hereafter become due her, together with the sum of all unpaid taxes of every kind against the property, shall at any time either now or hereafter equal or exceed the value of the property, he may order further payment of any past-due taxes within a reasonably short period so that defendant will be fully protected. As a further condition precedent to a moratorium or a continuation or extension thereof, plaintiffs shall pay defendant the sum of $40 for the first month and $15 for each succeeding month for the period beginning with the commencement of this suit, these latter sums to be paid within 30 days from the date this opinion is handed down. Plaintiffs shall

further pay defendant $30 a month each month from the date the decree in its modified form is rendered by the trial court. Such payments shall apply on the interest due or to become due. Failure to pay any such amounts at any time due in accordance with this opinion or the decree to be entered by the trial court shall result in the foreclosure sale becoming absolute and the dismissal of the bill of complaint.

The case is remanded to the trial court to ascertain the condition of the taxes, etc., and thereupon to enter decree in accordance with this opinion. Neither party will recover costs.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.