YOUNGS v. BURLESON.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MORATORIUM RELIEF.
   On appeal from second order extending period of redemption from sale under foreclosure by advertisement under mortgage moratorium act and amendments, questions which might have been raised on appeal from first order are not considered where no appeal had been taken therefrom (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 3, Pub. Acts 1935).

2. MORTGAGES—MORATORIUM RELIEF—DISCRETION OF COURT.
   Granting of relief under mortgage moratorium act is a matter of discretion for trial court and will be sustained unless an abuse of discretion is affirmatively shown (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 3, Pub. Acts 1935).

3. SAME—MORATORIUM RELIEF—CONDITIONS—PRESERVATION OF CONTRACT OBLIGATIONS.

The purpose of the mortgage moratorium act is to prevent valuable property from being sold at distress prices occasioned by an economic emergency and give mortgagors a chance to preserve their equities, conditioned, however, on their payment of adequate compensation during period of extension so as to keep inviolate contractual obligations (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 3, Pub. Acts 1935).

4. SAME—MORATORIUM RELIEF—ABUSE OF DISCRETION.

Trial court, in extending period of redemption under mortgage moratorium act for second time after mortgage had been foreclosed by advertisement *held*, to have abused discretion conferred by that act where downtown property consisting of tract upon which stood three buildings from 40 to 60 years old in great need of repair could not be sold for amount due on mortgage and payments required of mortgagor were insufficient to reimburse mortgagee for amount expended for taxes alone and debt was otherwise increased through accumulation of interest and insurance premiums leaving no equity of mortgagor to preserve (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 3, Pub. Acts 1935).

5. SAME—MORATORIUM RELIEF—IMPAIRMENT OF CONTRACTS.

Sympathy for mortgagor prompting division of loss for bad investment may not be indulged at expense of mortgagee under mortgage moratorium act where it results in an impairment of latter's contract rights (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 3, Pub. Acts 1935).

Appeal from Kent; Perkins (Willis B.), J. Submitted October 17, 1935. (Docket No. 111, Calendar No. 38,639.) Decided January 6, 1936.

Bill by Florence M. Youngs against Mary C. Burleson for relief under mortgage moratorium act. Order for plaintiff. On amended bill for further relief under amendment of moratorium act and adding Ellen B. Goodlin as party defendant. Amended

order and decree for plaintiff.   Defendants appeal. Reversed and remanded.

Gillard & Gillard, for plaintiff.

J. Thomas Mahan, for defendants.

Butzel, J.   On December 28, 1925, Dan and Florence M. Youngs executed a mortgage of $23,500 to Mary C. Burleson on property opposite the post-office at the southeast corner of Division avenue and Lyon street in Grand Rapids, with two old apartment houses and a small dwelling house situated thereon.   Upon default in payments, foreclosure by advertisement was begun and on November 4, 1932, the property was bid in by Mary C. Burleson for $26,074.26, the amount then due her for principal, interest and taxes paid by her.   On October 5, 1933, upon the filing of a bill of complaint for a moratorium by Florence M. Youngs as survivor of herself and Dan Youngs, the court issued an injunction, the nature of which is not shown by the record.   On February 1, 1934, an order was entered continuing the injunction to March 1, 1935, or until the further order of the court, transferring the foreclosure suit to the chancery side of the court, extending plaintiff's equity of redemption to March 1, 1935, enjoining the issuance of a writ of restitution until that time and fixing the fair rental value of the property at $30 per month, beginning February 1, 1934.   As no appeal was taken from this order, we need not consider questions that might have been raised.   On February 28, 1935, however, plaintiff filed another bill of complaint under Act No. 3, Pub. Acts 1935, amendatory of the mortgage moratorium act (Act No. 98, Pub. Acts 1933, as amended by Act No. 20,

Pub. Acts 1934 [1st Ex. Sess.]), effective February 26, 1935, seeking an extension of the moratorium until March 1, 1937, upon the same terms as provided in the former order.   On March 15, 1935, Ellen B. Goodlin, who had previously acquired the interest of the mortgagee, Mary C. Burleson, was added as a party defendant.   Defendants in their answer stress the inequity of such further extension and contend that under the act no further moratorium is justified.

The meagre testimony embraced in only 11 pages of record, together with the undenied statements in the bill of complaint and answer, indicate that the house and buildings contain a total of 14 apartments, or thereabouts, rented for about $15 per month. Plaintiff occupies the best apartment.   The buildings are very old and in need of repair or renovation. Plaintiff and her daughter own other property, which evidently does not bring in any surplus income over the fixed charges.   No taxes have been paid by them on the property involved in the instant case since 1930.   The insurance was cancelled when the foreclosure proceedings were instituted.   Ten of the apartments are occupied by families on relief, the rent being paid by the city.   Plaintiff's daughter testified that while she believed that the property might be sold for the amount of the mortgage, it had not been offered to possible buyers at a price below $40,000.   During the year prior to the hearing, $1,986.28 had been received in rentals from the property, but $1,652.42 had been expended for janitor service, heat, gas, electricity, and minor repairs so that after the payment of $30 per month for the ten months prior to the hearing to defendant, there was only a small sum left for plaintiff, who also occupied an apartment in the building.   The testimony of a realtor showed that the age of the frame house is

from 45 to 50 years, that of the red brick building west of it, 40 to 45 years, while that of the yellow brick building still further to the west is about 60 years; that the buildings are practically obsolete, both physically and from the standpoint of usability; that the land is only fit for commercial or industrial use; that many of the apartments are heated by stove although there are old furnaces in the buildings and the cost of renovating the buildings so as to make them bring in better return would exceed their present worth; that they have a hopeless future for residence purposes and the loss will be continuing, if so used; that it would be far better to tear them down and then possibly realize $60 per month from the property as a parking lot. From the time of the foreclosure sale to that of the hearing, additional interest for over two years and four months had accumulated, and no further taxes were paid. Those for the year 1934 amounted to $592.31. While the assessment against the property has now been lowered, the amount ordered by the court was so insufficient that the mortgagee was forced to pay out additional moneys of her own for part of the taxes and insurance after application of the $30 per month received by her. The amount due on the mortgage had risen from $23,000 to approximately $30,000. Testimony showed that the property had not been a profitable investment even in 1928 before the depression began, but this was ascribed to the inefficiency of the janitor in charge. No objection is raised by appellee as to the findings in the opinion of the trial judge, who, in granting the extension of the moratorium conditioned upon payment of $30 per month by plaintiff, stated that the mortgagor, at the time the loan was made, purchased the property both as a speculation and as a home for his family; that the mortgagee

had made the loan upon what he believed was good security; that both parties thought it was a good venture, but that it had proven just the reverse of what the parties had anticipated; that "both were mistaken as to the possibilities of this property in paying out on this mortgage, and there they stand before the court. Is the court under this moratorium act to place penalty for failure of judgment upon the mortgagor or divide that penalty between the mortgagors and the mortgagee because he made the loan? He saw the property and estimated its value at the time the loan was made six or seven years ago. He took his chances that the property would pay out. The Youngs took the chance that the property would pay out, but both were mistaken. It hasn't paid out and never will pay out. If the property was put upon the market today, it couldn't sell for the amount of the mortgage as I have already said."

The granting of relief under the mortgage moratorium act is a matter of discretion for the trial court and will be sustained unless an abuse of discretion is affirmatively shown. *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich. 644; *Michigan Trust Co.* v. *Rose,* 271 Mich. 115; *Ciotte* v. *Ullrich,* 267 Mich. 136; *Tuxedo Enterprises, Inc.,* v. *Detroit Trust Co.,* 272 Mich. 160, 170; *Barker* v. *Title & Trust Co.,* 271 Mich. 641; *Jennings* v. *Arnold,* 272 Mich. 599. The trial court undoubtedly abused its discretion in holding that each party must bear part of the loss as it occurs on property that will never pay out. The purpose of the moratorium act is to prevent valuable property from being sold at distress prices occasioned by an economic emergency, and give mortgagors a chance to preserve their equities, conditioned, however, on the mortgagors

paying adequate compensation during the period of the extension, so as to keep inviolate contractual obligations. The lower court, however, decided in effect that the mortgagee must be penalized because he took as security a piece of property with worn-out buildings and which subsequently turned out to be a bad investment. The purpose of the act was to protect the equity of the mortgagor, but here no equity was left. While sympathy for plaintiff might have prompted the division of the loss by enabling her to continue to live in the property and also enjoy a small income from it, at the expense of the mortgagee, this could not be done by an impairment of the contract rights of the mortgagee. The debt should not be permitted to grow nor the security to be impaired. *Jennings* v. *Arnold, supra.* For recent cases where the court met with similar fact situations and properly found the case to be outside the scope of the moratorium act, see *Virginian Joint Stock Land Bank of Charleston* v. *Hudson, supra; Rodine* v. *Drew,* 194 Minn. 121 (259 N. W. 699); *Clark* v. *Hass,* 129 Neb. 112 (260 N. W. 792); *First National Bank of Shakopee* v. *Hammill,* 195 Minn. 185 (262 N. W. 160); *Young* v. *Penn Mutual Life Ins. Co.,* 192 Minn. 446 (256 N. W. 906).

The extension of the moratorium was an abuse of discretion. It should be set aside and the motion for confirmation of sale asked for by defendant should be granted. The case is remanded to the trial court for that purpose. Defendants will recover costs.

North, C. J., and Fead, Wiest, Bushnell, Edward M. Sharpe, and Potter, JJ., concurred. Nelson Sharpe, J., did not sit.