WURZER v. GERALDINE.

1. MORTGAGES—MORATORIUM RELIEF—DISCRETION OF COURT.
   There is no rule of thumb or yardstick by which the right to moratorium relief and the reasonableness of its terms can be measured, the question being, in each case, as to whether the trial court abused its discretion.

2. SAME—MORATORIUM RELIEF—EQUITY.
   In proceeding to foreclose mortgage on 2,000-acre tract of land used as part of a recreational project, order modifying pre-

vious moratorium order, to grant such payment to mortgagee as income from the property would permit, conditional upon immediate ouster for failure to make prompt payment *held*, equitable, where, so far as record shows, property constitutes mortgagors' entire resources, they have a substantial equity above the mortgage which has been greatly reduced through application of all of the income of the property towards payments, and there are good prospects of payment in the near future (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [1st Ex. Sess.], Acts Nos. 3, 152, 158, Pub. Acts 1935).

Appeal from Otsego; Smith (Guy E.), J. Submitted January 5, 1937. (Docket No. 9, Calendar No. 39,142.) Decided March 1, 1937.

Mortgage foreclosure proceeding by Louis C. Wurzer, administrator with will annexed of the estate of Herman L. Benz, deceased, against Dion Geraldine and others. Motion by plaintiff to terminate period of redemption, and counter-motion by defendant to modify order extending period of redemption. From order made, plaintiff appeals. Modified and affirmed.

*Wurzer & Higgins* (*John T. Higgins*, of counsel), for plaintiff.

*John McNeil Burns* and *Cyril E. Bailey*, for defendants.

BUTZEL, J. The factual background of the present case is partly set forth in *Wurzer* v. *Geraldine*, 268 Mich. 286, wherein we held the decree of foreclosure to be final notwithstanding its provisions for the payment of the amount found to be due in five instalments and for the staying of the execution until, upon proper motion, a showing was made of a default in the payment of an instalment. We fur-

ther denied moratorium as the effective date of the act relied on was subsequent to the entry of the final decree. Upon foreclosure sale, the property was bid in for $10,384.65 which covered the first three instalments due under the decree together with interest plus the amounts that had been paid out by the mortgagee for an insurance premium and the 1933 State and county taxes. The period of redemption expired on June 6, 1935. Before this time arrived, the moratorium act had been amended and upon application by defendants, the trial court granted a moratorium in accordance with Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 (1st Ex. Sess.), Acts Nos. 3, 152, 158, Pub. Acts 1935. A moratorium order was entered on stipulation, both as to substance and form, by the parties. It extended the period of redemption to March 1, 1937, and provided that on the 31st day of August of 1935 and again in 1936 the mortgagors pay the current taxes for the previous year; that they also pay each year the current instalment on the so-called 10-year plan for taxes in default for three previous years; that they also pay the annual cost for adequate insurance on the property, and also on February 28, 1936, they pay the interest on $10,538.04 principal to that date, and on February 28, 1937, pay the interest on the same amount of principal to March 1, 1937. Dion Geraldine was appointed custodian of the property and Howard W. Smith, who had been selected by plaintiff, was appointed a joint custodian, the former to look after the management and the latter to take charge of the finances. Moneys were to be deposited in a joint account and to be withdrawn on their joint signatures.

The mortgaged property consisted of 2,000 acres of cut-over timber land in the Au Sable district and constituted part of a larger tract used for recrea-

tional activities.   A clubhouse containing about 50 rooms with an annex, barns, power house, etc., were located on the mortgaged property.   According to the undisputed testimony offered by defendants, the mortgage indebtedness to plaintiff's decedent had been reduced from $56,000 to $37,000 and then through the organization of the Au Sable Club and the instrumentality of a trust agreement and sales of membership in the club, etc., was further reduced from $37,000 to $12,000 in a little over two years. However, the enterprise suffered from the depression and through nonpayment of taxes, insurance, etc., the indebtedness again grew to $17,682.45, the amount found due in the foreclosure decree. On October 11, 1935, plaintiff moved to terminate the period of redemption as extended by the moratorium order of the court on the ground that defendants had failed to pay $268.41 (the amount of the 1934 taxes), the premium of $395 for renewal of insurance and also that defendants had made an oil lease of the property and had committed waste.   Defendants, on the other hand, showed that $70 was obtained from service charges paid by members of the Au Sable Club and that in order to pay the instalment on the 10-year plan on taxes for previous years, defendants had to obtain money from outside sources.   They further showed that they had arranged for the renewal of insurance at the agency in Gaylord, Michigan, with which they did business, the agent testifying that he had issued the policy, but on learning that it was necessary to arrange for the policy on credit, plaintiff was unwilling to accept it.   An oil lease had been made, only $375 thus far having been realized from it.   Defendants claim they made the lease in the hopes that sufficient funds could be realized thereby so as to pay plaintiff.   There was no claim made that such lease was binding on plaintiff.

It was also shown that an inconsequential amount of timber had been taken from either the mortgaged property or that adjoining it, with substantially no loss to the security. It was further shown that the property had been run at a loss, but that with the return of better times, defendants would shortly realize sufficient to pay plaintiff's indebtedness. It was shown that $1,200 had been used by defendants prior to the moratorium order to clear some other property in a futile effort to sell it to the government and from the proceeds of which sale, defendants expected to pay plaintiff. It was shown that defendants had no other resources except the Au Sable property and there had been no diversion of income since the moratorium order was entered; that after paying the meager expenses and salaries of two custodians, instead of one, there was but $2.07 left over after the year's operations.

We have not before us the result of the 1936 operations which defendants looked forward to, to enable them to make good their defaults. In addition to replying to plaintiff's motion to terminate the period of redemption, defendants filed an application to modify the terms of the moratorium order and the court did so modify it by an order which gave appellees three months in which to pay the insurance premium paid by plaintiff, six months in which to pay the 1934 taxes paid by plaintiff. It also modified the previous order so as to provide for interest to be paid at the rate of $100 on February 15, 1936, and like sums on March 15th, May 15th and July 16th of the same year, which aggregated only $400, instead of $1,167.95, interest provided for under the original order. There was no provision for payment of interest after July 16, 1936. The order further provided that in the event of any default by defendant in payments or in filing paid tax receipts,

insurance policies or in making reports, and such default should continue for 10 days, the court would, upon application of plaintiff, issue a certification of such default and such certificate would *ipso facto* terminate the period of redemption from the foreclosure sale of December 7, 1934, and that plaintiff would thereupon be entitled to take possession.

The case does not fall in the category of those on the same subject matter that have been previously decided by this court. There is no rule of thumb or yardstick by which the right to a moratorium and the reasonableness of its terms can be measured. The question solely is whether the trial court abused its discretion. There is no showing whatsoever that defendants had any other resources and while, in a sense, it might be claimed that the property was being held on speculation, the project evidently represented defendants' entire resources and they had secured funds from outside sources in order to keep it up. The case differs from *Youngs* v. *Burleson,* 274 Mich. 132, where it was shown that no equity could be saved under any circumstances and there was sure to be a loss which would become larger through any delay.

We cannot say that there was an abuse of discretion by the trial judge when, in modifying the moratorium order, he exacted such rental as the income from the property would permit and he was apprised of the fact that defendants had no other resources, that they had applied all the income from the property towards the payments and that the principal of the mortgage had been very materially reduced and that it appeared as if there was a very substantial equity over and above the mortgage, and there was a very good prospect of paying plaintiff in the near future and also saving the equity for defendants. The judge further strictly enjoined de-

fendants to make payments promptly under penalty of losing all their rights in the event of a default lasting over 10 days.

The moratorium order is affirmed but on condition that all amounts due for interest, taxes and insurance premiums under said modified order are paid within 30 days from the time this opinion is handed down. Otherwise, plaintiff, upon proper showing of such default, may ask for a peremptory order terminating the period of redemption and, upon a proper showing, be entitled to exercise the right to take possession of the mortgaged property, as provided in the decree of foreclosure.

The order of the circuit judge is affirmed, with costs to defendants.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.