## William D. Fitzhugh v. Andrew C. Maxwell.

*Equity jurisprudence: Forfeitures: Land contracts.* A court of equity has no jurisdiction to enforce forfeitures; if the vendor in a land contract desires such relief he must seek it at law, or by entry for the breach of condition.

*Land contracts: Equitable title: Lien for purchase price: Foreclosure: Sale.* A contract for the sale of land conveys to the vendee an equitable title, and the only principle upon which the vendor may sue for his money, and at the same time seek security against the land, is the one which recognizes the analogy to a vendor's lien in cases where the legal title has been conveyed; and the vendee's title can only be divested by a sale. There can be no such thing as a strict foreclosure of such a lien.

*Land contracts: Vendor's claim: Money debt: Lien on the land.* The claim of a vendor in a land contract is but an ordinary money debt secured by the contract, and his proceedings to enforce the lien upon the land should be governed by the analogies of proceedings to enforce other equitable liens, and be executed by a sale to satisfy the amount due.

*Heard April 14. Decided June 6.*

Appeal in Chancery from Bay Circuit.

*McDonell & Mann,* for complainant.

*A. C. Maxwell,* in person, for defendant.

FITZHUGH *v.* MAXWELL.

CAMPBELL, J:

In March, 1868, Fitzhugh sold by executory contract to Maxwell twenty-nine acres of land in Bay county for two thousand one hundred and ninety-two dollars and twenty-five cents, payable in four equal annual installments, with seven per cent. interest. One-fourth of this was paid down. Whether any further payments were made is disputed. Maxwell was entitled to and received possession.

On the 7th of May, 1875, Fitzhugh filed a bill insisting on a forfeiture of the contract, but with a prayer for general relief. A decree was granted of forfeiture unless the amount set forth in the decree was paid by May 7, 1876. That amount gave no credits beyond the first payment.

A court of equity has no jurisdiction to enforce forfeitures. If a party desires such relief he must seek it at law, or by entry for the breach of condition. In the present case the contract contains no clause of forfeiture whatever, and as time is not of the essence of such a contract, and has not been made so by any subsequent action of either party, the utmost that could be claimed would be a rescission, if the circumstances justified it. But in this case the delay has been allowed without any peremptory notice or demand to change the ordinary condition of affairs.

Assuming that a bill framed with such a prayer as the present one can be allowed to stand as a bill for specific performance, the decree is erroneous in not requiring the payment of money absolutely and a sale to enforce the vendor's lien. The only thing due to the vendor is his money, and this is due as an ordinary money debt, which it is the object of the suit to collect. It is so purely a debt that a writ of *ne exeat* lay to secure it, which is never granted in any case except as equitable bail for a sum due and ascertainable as a money demand. The nature of the suit and the character of the rights of both parties is very well set forth in *Boehm v. Wood, 1 T. & R., 332,* where the writ was maintained and explained by *Lord Eldon.*

FITZHUGH *v.* MAXWELL.

While at law the title remains in the vendor, yet in equity the contract conveys it to the vendee, and the only principle which allows the vendor to sue for his money, and at the same time seek security against the land, is the one which recognizes the analogy to a vendor's lien in cases where the legal title has been conveyed. The title of the vendee, whether legal or equitable, can only be divested by a sale, and under the English practice, until judicial sales were more recently provided for by other means, the defendant's conveyance was necessary to bar his rights.—*Boehm v. Wood, supra.* There is no recognition anywhere of the doctrine that there can be a strict foreclosure of such a lien, whether the land has been conveyed or not. And the only controversy has been, whether cases did not exist where, by reason of the defendant's bankruptcy, or by reason of the peculiar nature of the property and its uses, the lien was lost entirely. There have been several cases where it became necessary to consider whether a sale for railway purposes left such a lien in existence. It was, however, maintained; but the court has uniformly refused to regard the vendor as entitled to the rights of a mortgagee, or to give him possession, as is done in mortgage cases, before sale.— *Pell v. Northampton & Banbury Junction R. W. Co., L. Rep., 2 Ch. Ap., 100; Walker v. Ware, Hadham & Buntingford R. W. Co., L. R., 1 Eq., 195,* recognized and approved in *Wing v. Tottenham & Hampstead Junction R. W. Co., L. R., 3 Ch. App., 740;* also see *Munns v. Isle of Wight R. W. Co., L. R., 5 Ch. Ap., 414,* where, although the railroad was insolvent, the appellate court reversed an order which granted an injunction against their use of the road, and placed the road in the hands of a receiver so that neither party should be damnified. In *Topham v. Constantine, Taml., 135,* the vendor's lien was confined to the deficiency after taking account of personal assets where the vendee had died. In *Rome v. Young, 3 Y. & Coll., 199; 4 Y. & Coll., 204,* where the purchaser had died insolvent, the vendor was only allowed to come in and make proof in a

creditor's suit for the deficiency after the estate was sold and proceeds applied on the lien. A similar rule applied in bankruptcy in *Exp. Gyde, 1 G. & J., 323.*

An equitable lien has never been enforced except by sale. This is recognized in the decisions referred to, and in *Seton on Decrees, 177.* A strict foreclosure is deemed inapplicable, even under the English rule, which grants that relief on mortgages, and although the contract may contain terms of forfeiture. The only alternative seems to be, in some cases, to allow a dismissal of the bill and a rescission where the purchaser makes default in paying the sum decreed. A suit on a mortgage in England is not a suit to collect money, but one to get land, whereas a bill by a vendor is always to get his money, and the lien on the land is only a means of collecting it in whole or in part.

The American theory of mortgages, as securities and not estates, makes what we term foreclosure proceedings really collection proceedings, and with us a sale is the universal means of satisfaction. To apply the doctrine of strict foreclosure to a vendor's lien, and not to an express mortgage, is a direct reversal of all rules, and in violation of every equitable principle and analogy.

The decree is erroneous in this respect.

So far as the deduction is concerned which Maxwell claims, the testimony is somewhat conflicting. Maxwell's evidence, that the services and expenditures which he proves were to be allowed, shows his own understanding that Fitzhugh so agreed. But as the payment was never actually applied on the contract, and as when Maxwell furnished his accounts he claimed the credit generally, when there were other debts also, it can hardly be regarded as a payment in the strict sense of the term. We think the amount of the decree cannot therefore be reduced. But as a decree to enforce a forfeiture it was clearly wrong, and it was not framed on any other basis. It is just, however, to allow it to be rectified so as to provide for a sale in the usual manner of mortgage sales,—the complainant joining in the conveyance,—

in case the money is not paid; the time for payment to be extended until the seventh of August, and the defendant to be allowed costs of the appeal, but not of the circuit.

The decree below must be reversed, and a new decree entered in accordance with these suggestions, and the case remanded for further proceedings.

The other Justices concurred.