## Jay Bassett, adm'r v. Noah Shepardson.

*Public policy—Fraudulent Settlements—Dissolution of partnership by marriage—Testimony.*

1. It is against public policy to permit a party to a written settlement to contest his liabilities thereunder on the ground that he had fraudulently contrived it for the purpose, merely, of screening his property from justice.

2. Partnership relations between a man and a woman are dissolved by their marriage; and the man's continued possession of property owned by the woman but used by the firm is by virtue of a license, merely, which would cease at her death.

3. Defendant in a suit brought by an administrator cannot testify to matters known to no one else besides the decedent.

Error to Wayne. (Jennison, J.) Oct. 17.—Oct. 31.

Replevin. Plaintiff brings error. Reversed.

*Wilkinson, Post & Wilkinson* for appellant.

*George W. Coomer* for appellee.

Graves, C. J. November 1st, 1881, the decedent, who was then a widow bearing the name of Olive L. Brunthaver, entered into the following written agreement with the defendant.

"An article of an agreement between Olive L. Brunt-

haver, of Erie, Monroe county, Michigan, of the first part, and N. Shepardson, M. D., of Fremont, Ohio, of the second part, witnesseth:

That said party of the first part agrees to furnish to the said party of the second part the sum of three thousand dollars, to be used in the drug business at such place or places as they both may agree upon; and that said party of the second part agrees to give his entire time and experience to the party of the first part in attention to said drug business; that said party of the first part also agrees to furnish said party of the second part a team, harness and wagon for the express use of said drug business, and that said party of the first part and said party of the second part are to share alike in the profits of said drug business after all the expenses has been paid; that said agreement is to hold good for the term of ten years, unless the party of the first part and the party of the second part agree mutually to withdraw from said drug business, or by their consent change it into some other business; also that the party of the first part and the party of the second part agree that after all the expenses has been paid, the remaining profits, if any, are to be used in the increase of said drug business, both sharing alike in all profits and losses.

In witness whereof we have this day Nov. 1, 1881, subscribed our names.

N. SHEPARDSON, M. D.
OLIVE L. BRUNTHAVER."

At this time the defendant had a wife living, who was prosecuting proceedings against him for a divorce.

The decedent was holding a mortgage against him for $600, and on the 19th of November, 1881, and nearly three weeks subsequent to the foregoing agreement for going into the drug business, he executed and delivered to her the following paper:

"ERIE, MONROE Co., Mich., November 19th, 1881.

This is to certify that I have this day made a full and complete settlement with Mrs. Olive L. Brunthaver, and to pay up all my indebtedness to her I have sold to her my two bay mares, harness and buggy for four hundred and fifty dollars, to be delivered to her at any time which she may wish. I also state that I have bought out all interest and right of J. B. Miles, of Wyandotte, in the Miles drug-store!

drugs and fixtures, in my name, but for Mrs. Olive L. Brunthaver, and with her own money, I acting as her agent by reason of a power of attorney,—said drug-store to be conducted in my name, but for her special interest and profit,—paying for the same twenty-nine hundred dollars of money given me by her for the purpose above stated.

N. SHEPARDSON, M. D., Agt.

I further state that I have in my possession a combination safe bought of Mr. Peck, which belongs to Mrs. Olive L. Brunthaver, and which is used for the purpose of keeping her papers and money in. Said safe to be used in the said drug-store at Wyandotte, Mich., for her benefit, and to be delivered with the balance of stock and fixtures into her hands whenever said Olive L. Brunthaver chooses, as she has free and full control of them.

N. SHEPARDSON, M. D."

The mortgage was discharged by decedent at the date of this paper. He had already engaged in the drug business at Wyandotte, under the arrangement of November first. June 3d, 1882, the former wife of defendant obtained a decree of divorce from him, and five days later he intermarried with decedent and she died about six weeks afterwards.

The defendant having possession of the mares with the buggy and harness specified in the writing of November 19th, the plaintiff, as special administrator of decedent, claimed the property as belonging to her estate, but the defendant refused to deliver it. The plaintiff then seized it on this writ of replevin. Under the rulings of the circuit judge the jury found in favor of defendant.

The plaintiff relied on the writing of November 19th, and the defendant resisted the action chiefly on two grounds: *first*, that the writing of November 19th was not meant to have effect as between the parties, but was simply a contrivance to make it appear that the defendant was not the owner and to perpetrate a cheat: *second*, that by means of the instrument of November 1st the decedent and himself became copartners, and in pursuance of the same agreement this property was furnished by decedent for the use of the firm, and that on her death the right of use and possession devolved to him as surviving partner.

The first proposition was based on defendant's testimony. He swore that the reason for giving the instrument of November 19th was "to prevent his first wife and her lawyers getting hold of this property, coming onto the store or anything connected with it; and that it had nothing to do with the payment of any debt; and that he had no settlement with Mrs. Brunthaver on that day, except that the mortgage had been settled and she signed the discharge on that day; and that there was no settlement on that day in regard to what had been done with her funds in the drugstore; that he had a power of attorney from her at that time; and that he himself put into said drug-store purchase about six hundred dollars." The circuit judge adopted as correct the theory of these propositions, and left it to the jury to find in defendant's favor, if satisfied the facts were as supposed. We are compelled to differ from the circuit judge.

As to the first proposition, it was not competent for the defendant to impeach the paper of November 19th by any such showing as he was allowed to offer. He was not to be permitted to set up that the instrument was a fraud; that it was concocted to screen his property from justice; that the design of the transaction was to conceal his effects so as to preclude his wife, who was suing for a divorce, from having such interest as the law might give her in case the truth was not covered up. The ruling operated to allow him to allege his own turpitude to show that his agreement was a scheme to impose on the court having cognizance of the divorce proceedings, and perpetrate a fraud upon his wife. Public policy will not tolerate such a defense.

The second proposition is equally untenable. What particular effect in point of law may have been wrought to the partnership agreement by the subsequent paper we have no occasion to consider. Admitting that the defendant and the decedent were brought into the partnership relation by the first agreement, the fact is certain that the subsequent intermarriage of the parties worked an instantaneous dissolution

of the relation,—Pars. Partn. (3d ed.) 399, 462; Lindl. Partn. (3d ed.) 240, 241,—and the right over this property by the defendant ceased. The firm being dissolved, the privilege to use and hold the decedent's team, which was nothing more than an incident, terminated at the same time. There was no longer a legal right. The subsequent possession was no more than a license which ceased at her death. Hence, the claim that the defendant was entitled to continue in possession as surviving partner had no basis.

The defendant was allowed to testify concerning several matters which must have been equally within decedent's knowledge, and at the same time unknown to others. It is scarcely necessary to refer separately to these rulings. We are not able to affirm them. *Downey v. Andrus* 43 Mich. 65.

These views dispose of the case as it appears on this record.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.