LUTZ *v.* DUTMER.

1. VENDOR AND PURCHASER—DEFAULTS—JUSTIFICATION—FINDING OF
   COURT.
   
   In vendors' suit for specific performance of land contract, to
   foreclose it and for deficiency, finding of trial court that plain-
   tiffs had not breached contract in the several material ways
   asserted by defendant vendees before latter refused to make
   further payments and which latter claim justified their refusing
   to go on with the contract and caused latter's defaults *held,*
   correct.

2. SAME—TITLE CLEARANCE—FORECLOSURE—ESTOPPEL.
   
   Under land contract provision that vendors were to commence
   title-clearing proceedings within two weeks and correct abstract
   within four months, reserving $300 from purchase price for
   such expense and giving purchasers the right to institute such
   proceedings if vendors did not do so, purchasers *held,* not en-
   titled to complain of vendors' failure to proceed to clear title
   after institution of foreclosure suit over four years thereafter
   where purchasers themselves had failed to do so.

3. SAME—RELEASE OF INDIVIDUAL LOT—PAYMENT AS CONDITION
   PRECEDENT—DEFAULTS—TENDER.
   
   Under land contract for sale of acreage which provided that
   vendors would release a lot on payment to them of one and
   one-half the acreage value, payment was a condition of release
   and such condition was not complied with by letter, sent by
   purchasers' attorney over 15 months after vendors had, be-
   cause of purchasers' defaults, commenced suit in equity for
   specific performance, foreclosure and deficiency, in which he
   inquired when they would furnish a deed covering a certain
   lot and stated purchasers were prepared to pay and therewith
   tendered a check for one and one-half times the acreage cost
   and upon vendors' forwarding of deed purchasers would for-
   ward a check for payment, such letter being no more than an
   offer to comply with the conditions of the contract.

4. SAME—BREACH OF CONTRACT BY PLAINTIFFS—EVIDENCE—PAYMENT OF SPECIAL ASSESSMENT.

In suit for specific performance, foreclosure and deficiency, brought by vendors under land contract who had agreed therein to pay special assessments, finding that vendors had not breached the contract by failure to pay some drain taxes is sustained where there is testimony by a plaintiff showing they were not due at time claimed by purchasers' attorney in letter written to vendors.

5. SAME—CONSPIRACY TO FREEZE OUT SUBDIVIDER—QUESTION OF FACT —EVIDENCE.

Finding of trial court for plaintiffs on question of fact as to whether plaintiff vendors under land contract for sale of acreage, subdivided by defendant purchasers, had conspired with lot purchasers to "freeze out" defendant purchasers by having lot purchasers withhold payments so that defendants would become in default on their contract with plaintiffs is not disturbed on appeal where there was ample testimony to support finding made.

6. SAME—FORECLOSURE—CONSPIRACY TO FREEZE OUT SUBDIVIDER.

In vendors' suit for specific performance, foreclosure and deficiency, in which defendant purchasers, who had subdivided the tract, interposed defense that plaintiffs had conspired with lot purchasers to freeze out defendant purchasers, by entering decree for plaintiffs for foreclosure trial court disposed of defendants' cross-bill.

7. SAME—COMPARATIVE TITLE HELD BY PARTIES UNDER LAND CONTRACTS AND MORTGAGES.

The lien of a grantor after a conveyance of the fee is a mere equitable charge upon the land which does not even become an equitable lien until declared and established by judicial decree while a vendor before conveyance retains the fee as security for the purchase price and the purchaser has an equitable interest.

8. MORTGAGES—FORECLOSURE—DEFICIENCY—STATUTES.

The power to render a deficiency decree in mortgage foreclosure cases is purely statutory as it is a substitution for a legal action and must be governed by the rules which would apply at law.

9. VENDOR AND PURCHASER—DIVESTITURE OF VENDEE'S INTEREST.

The title of the vendee under a land contract, whether legal or equitable, can only be divested by a sale.

10. SAME—NATURE OF VENDOR'S INTEREST.

> The claim of a vendor under a land contract is but an ordinary money debt, secured by the contract.

11. SAME—SPECIFIC PERFORMANCE.

> Specific performance is granted in favor of the vendor of land as well as the vendee, though the relief actually obtained is the recovery of money, the purchase price.

12. SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY.

> One of the bases of the right to specific performance is mutuality of remedies.

13. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—ADEQUACY OF REMEDY AT LAW.

> Where specific performance is otherwise a proper remedy, that is, where a situation possesses no feature influencing discretion of the court, vendor under a land contract may obtain such relief as a matter of course by having vendee ordered to accept the deed and pay the purchase price and upon his refusal to do so the land may be ordered sold to satisfy the vendor's so-called lien and execution issue for any unsatisfied balance of the purchase money remaining; the right to specific performance not being dependent upon the inadequacy of the legal remedy.

14. SAME—SPECIFIC PERFORMANCE—MUTUALITY.

> Relief by specific performance is available to a vendor under a land contract as well as to a vendee on the ground of mutuality.

15. SPECIFIC PERFORMANCE—DISCRETION OF COURT.

> Specific performance is not a remedy of right but rests in the sound discretion of the court.

16. VENDOR AND PURCHASER—ASSIGNMENTS—ASSUMPTION OF LIABILITY.

> An assignee may be held liable on a land contract by reason of an express assumption in accordance with the terms of the contract assigned.

17. SAME—ACTION AT LAW BY VENDOR AGAINST VENDEE'S ASSIGNEE—THIRD PARTY BENEFICIARY CONTRACT STATUTE.

> Former rule that vendor under a land contract could not prosecute an action at law against vendee's assignee who had assumed and agreed to pay because no privity existed between the

vendor and the vendee's assignee has been changed by statute relative to third party beneficiary contracts (Act No. 296, Pub. Acts 1937).

18. SAME—SPECIFIC PERFORMANCE—FORECLOSURE—EQUITY.

A bill for specific performance of a land contract is in the nature of a bill of foreclosure and when the rights under the contract are determined the court will have full power to provide for protection of all equities and to order a sale for the satisfaction of moneys due, if necessary.

19. SAME—RIGHTS AND REMEDIES OF ASSIGNEE OF PURCHASER.

The assignee of the purchaser under a land contract is entitled to the same rights as the original purchaser, his assignor, and all remedies open to the assignor for the enforcement of the obligation are available to the assignee.

20. SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY—FRAUD AND OTHER PERSONAL BARS.

Specific performance is ordinarily granted to plaintiff only when defendant, if free from fraud or other personal bar, could have specific performance against plaintiff, as such relief will be refused unless there is mutuality of remedy to the parties.

21. VENDOR AND PURCHASER—ASSIGNMENTS—SPECIFIC PERFORMANCE —MUTUALITY OF REMEDY.

Since the vendee's assignee under a land contract may compel specific performance of contract for conveyance, as the assignee steps into the shoes of the purchaser, mutuality of remedy is maintained by giving a corresponding right to vendor to enforce specific performance against the vendee's assignee.

22. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACT—CHANGE OF REMEDY.

It is within the power of a legislature to change the formalities of legal procedure by alteration, limitation, substitution or enlargement without impairing the obligation of a contract providing it does not deny a remedy or so embarrass it with conditions and restrictions as seriously to impair the value of the right.

23. SAME—ENFORCEMENT OF THIRD PARTY BENEFICIARY CONTRACTS— STATUTES.

Act providing for enforcement by person for whose benefit a promise is made against the promisor held, constitutional in

so far as applicable to suit by vendor for specific performance of a land contract against vendee's assignee, the statute being remedial in character (Act No. 296, Pub. Acts 1937).

24. VENDOR AND PURCHASER—VENDOR'S REMEDY AGAINST VENDEE'S ASSIGNEE.
    In equity the vendor under a land contract may call upon the vendee's assignee for payment of the purchase money and have the land sold in satisfaction thereof, thus eliminating the equitable title of such assignee.

25. SAME—FORECLOSURE—PARTIES—MULTIPLICITY OF SUITS—EQUITY.
    In suit to foreclose a land contract in equity both the purchaser and his assignee are proper parties defendant and, if the assignee has assumed and agreed to pay the purchase price, the court should adjust the equities between the parties and avoid a multiplicity of suits, and retain jurisdiction to grant complete relief.

26. SAME—FORECLOSURE—NATURE OF RIGHT OF DEFICIENCY.
    In a suit to foreclose a land contract in equity the right to a deficiency does not rest upon any analogy to statute governing deficiency decrees in mortgage foreclosure cases but arises rather from the nature of the suit; the decree being rendered for the amount due and, to protect the vendee, it provides for a sale of his equitable interest in the land and application of the proceeds of such sale to the amount due on the vendor's claim.

27. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS—ADEQUACY OF REMEDY AT LAW.
    Equity affords jurisdiction in suit for specific performance to grant vendors under a land contract a complete and adequate remedy which they could not have in a court of law against both vendees and the vendees' assignees who had assumed liability under the contract, by bringing in all parties to settle the litigation in one suit (Act No. 296, Pub. Acts 1937).

28. VENDOR AND PURCHASER—VENDEES' ASSIGNEE—ASSUMPTION OF LIABILITY.
    The liability of the assignee of a land contract who has assumed and agreed to pay the balance of the purchase price cannot be extended beyond the limits of his contract of assumption.

29. SAME—ACCELERATION CLAUSE—AUTHORITY OF TRIAL COURT AS TO DECLARATION OF AMOUNT DUE.
    In vendors' suit for specific performance of a land contract which did not contain an acceleration clause, decree which gave plain-

tiffs right, in default of payment to them of past due amounts within less than a month, to have sale of premises to satisfy the entire purchase price both due and to grow due and for personal decree for deficiency against all of the defendants *held*, beyond authority of trial court.

30. HUSBAND AND WIFE—PARTNERSHIP.

A wife may not be in partnership with her husband.

31. DEEDS—CONVEYANCE BY GRANTOR TO HIMSELF AND OTHERS AS GRANTEES.

If a grantor conveys to himself and others the intention of the grantor will ordinarily prevail to prevent the grantees other than himself from taking the entire estate.

32. VENDOR AND PURCHASER—CONSTRUCTION OF ASSIGNMENT—PARTNERSHIP OF GRANTORS AND GRANTEES—TENANCY IN COMMON.

Although assignment of purchasers' interest in land contract is not in record, where bill of complaint in vendors' suit for specific performance against the vendees and a partnership, consisting of the vendees and another man and wife, and decree treat the four defendants as a partnership, assignment is construed as not conveying the whole estate, thereby enlarging its legal effect contrary to the intention of the parties, but as having created a tenancy in common between vendees and the other couple.

33. DEEDS—CONSTRUCTION OF GRANT TO TWO OR MORE PERSONS.

All grants or devises of land to two or more persons, with certain exceptions, are construed to create estates in common and not in joint tenancy unless expressly so declared (3 Comp. Laws 1929, § 12964).

34. TENANCY IN COMMON—TITLE—POSSESSION.

Tenants in common hold by several and distinct titles, with unity of possession, but without unity of title, each owner being considered as solely and severally seized of his share.

35. HUSBAND AND WIFE—SEPARATE ESTATE OF MARRIED WOMAN—DEFICIENCY—LAND CONTRACTS—ASSIGNMENTS.

Although separate estate of married woman, named in land contract as covendee with her husband, would not be liable thereunder for deficiency on note given by them for the purchase price, after their execution of an assignment to themselves and another man and wife, as partnership grantees, she became a tenant in common and liable in case of a deficiency to the ex-

tent of her interest, which was a part of her separate estate, which would be one-fourth in the absence of anything to the contrary appearing.

36. VENDOR AND PURCHASER—FORECLOSURE—SUBDIVISION—DEDICATION OF STREETS—EVIDENCE.

In suit to foreclose a contract as to purchase of land which defendants had subdivided, refusal of court to except from foreclosure decree the streets, parks and paths dedicated to the sole and only use of the lot owners in common as private ways and parks, pursuant to so-called dedication contained in the plat, is not approved on appeal where testimony is in dispute as to whether or not vendors joined in the dedication and rights of others, not parties hereto, may be involved and trial record is unsatisfactory.

37. APPEAL AND ERROR—UNSATISFACTORY RECORD—REMAND FOR CONSIDERATION OF RIGHTS OF PERSONS NOT PARTIES.

On appeal by purchasers from decree of foreclosure of contract for sale of land which appellants had subdivided, where record as to whether vendors had joined in dedication of certain private streets and parks for use of lot owners is unsatisfactory, case is remanded for further proceedings to determine rights of lot owners who were not made parties to foreclosure proceedings.

38. VENDOR AND PURCHASER—MORATORIUM—DISCRETION OF COURT.

Granting or refusing of relief under the moratorium act, being largely a matter of discretion with the trial judge, is not interfered with where an abuse of such discretion is not affirmatively shown in suit to foreclose a land contract in equity (Act No. 122, Pub. Acts 1933, as amended).

Appeal from Washtenaw; Sample (George W.), J. Submitted June 16, 1938. (Docket No. 108, Calendar No. 38,688.) Decided November 10, 1938 .

Bill by Henry Lutz and wife against William E. Dutmer and wife, individually and as copartners with Douglass A. Kendall and wife, doing business as the Home Land Lake Company, for the foreclosure of a land contract, a deficiency decree and

other relief. Cross-bill by defendants Dutmer against plaintiffs for damages for alleged fraudulent conduct and other relief. Decree for plaintiffs. Defendants appeal. Reversed and remanded.

*Burke & Burke* and *Jacob F. Fahrner,* for plaintiffs.

*Bland A. Pugh,* for defendants.

POTTER, J. June 12, 1928, plaintiffs Henry Lutz and Mary A. Lutz, his wife, sold part of their farm in Washtenaw county on land contract to defendants William E. Dutmer and Frances K. Dutmer, husband and wife, for $30,000. $4,700 was to be paid in cash on the execution of the contract. It was provided there should be paid the sum of $300 when the abstract of the seller was corrected by proper decree in chancery making the title in the seller merchantable and marketable in accordance with objections raised to the title thereto by attorneys for the purchasers, "it being understood that said abstract will be corrected by said seller within a period of four months from the date of this contract, and that such title-clearing proceedings will be commenced in the proper court by said seller within two weeks from the date of this contract. It is understood and agreed that if such title-clearing proceedings are not commenced by said seller within such time as stated, then and in that event, the said purchaser shall have the right to commence such title-clearing proceedings in the proper court for and on behalf of the seller and pay therefor on account of expenses of such proceedings and attorney's fees to an amount not exceeding the sum of $300 hereby retained by said purchaser for the expense of such title-clearing

proceedings." The balance of the purchase price was to be paid over a period of years. Interest on the unpaid balance was to be paid annually. Payments on principal of $2,000 per year were to begin June 12, 1931, and to be paid yearly thereafter. The full amount of the contract was to be paid within 10 years from the date it was entered into. A supplementary agreement dated May 5, 1932, extended the time of payment in full and provided all of the balance was to be paid on or before June 12, 1941. It also altered the provisions of the original contract in relation to interest for a period of two years. $250 was paid by the Dutmers to plaintiffs on the date of the supplemental agreement and they promised to pay $100 in one month, and $175 three months from June 12, 1932, and $175 each three months thereafter for a period of two years. Principal payments of $2,000 were to start at the end of the year following the two-year period, on June 12, 1935. The land contract provided the sellers were to pay any special assessments, including all road assessments, assessed against the property during the life of the contract. Plaintiffs agreed that upon request they would join in the execution of any proper platting and also release to the purchasers any lot or lots from the contract and any conveyance therefor on payment of one and one-half times the acreage value of each lot or lots, the acreage value being $1,100 per acre.

The Dutmers platted and subdivided the property together with adjacent land into a number of lots known as the Bonnie Brae Country Club subdivision. The plat was recorded in Washtenaw county and according to it certain portions of the subdivision were dedicated to the public and certain portions were dedicated to the property owners in the

subdivision. Whether the Lutzes signed the recorded plat is in dispute. The Dutmers spent large sums of money in making improvements for the purpose of selling lots.

The Home Land Lake Company, an alleged copartnership, was formed by the Dutmers and Mr. and Mrs. Kendall, Mrs. Dutmer's parents. It is urged by defendants that neither the copartnership nor the Kendalls had any interest in the property covered by the land contract, that their only interest was to earn commissions as a selling organization. The Dutmers and Kendalls filed under the assumed name statute * showing they would do business under the style ''Home Land Lake Company.'' In a suit in chancery in the circuit court for Wayne county, brought in the copartnership's name, it was stated in the bill of complaint the land contract here involved was assigned to the Home Land Lake Company. The bill of complaint was signed by the Home Land Lake Company, by Wm. E. Dutmer and Frances K. Dutmer. The names of the Kendalls were signed by their daughter, Mrs. Dutmer. June 4, 1932, the copartnership executed a contract to sell a certain lot to Ernest R. and Gertrude Hartzog. Below the copartnership name appeared the signature of Douglass A. Kendall who signed as its president.

Defendants Dutmer made all their payments under the original contract and supplemental agreement up to and including September 12, 1932, but refused on and after September 12, 1932, to make further payments. They claim that at about the time of their refusal they learned that plaintiffs falsely and in conspiracy with certain lot contract purchasers were endeavoring to freeze out the Dutmers.

---

* See 2 Comp. Laws 1929, § 9825 *et seq.*, as amended (Stat. Ann. § 19.821 *et seq.*).—Reporter.

They say that Lutz told the Dutmer contract pur
chasers to refuse to pay on their contracts which
would cause the Dutmers to fall behind in their pay-
ments which would enable Lutz to foreclose on the
contract. In return for the cooperation on the part
of the lot purchasers in the freeze-out, Lutz was to
give the Dutmer vendees more advantageous terms
of purchase and larger parcels of land. Lutz em-
phatically denied every portion of the claimed chi-
canery, stating on the trial he had assisted the Dut-
mers.

The vendors did not institute title-clearing pro-
ceedings within two weeks from the date of the con-
tract. Such proceedings have never been instituted
by either party. The Lutzes failed to pay a special
assessment for drainage of $138.60, which the Dut-
mers paid and which they claim was a failure to
comply with the terms of the contract on the part
of plaintiffs. Another claimed failure on the part
of the sellers urged by the Dutmers is that a lot was
not released in response to a demand and in accord-
ance with the contract and subsequent agreement.

Plaintiffs filed a bill for specific performance, and
to foreclose the land contract and for deficiency.
The defendants Dutmer filed answers denying plain-
tiffs were entitled to the relief prayed. Defendants
Kendall filed answers denying any contractual rela-
tions with plaintiffs or any liability on the contract.
Defendants Dutmer filed a cross-bill and asked af-
firmative relief because of the alleged subterfuge
and conspiracy and that their damages be assessed
and set off against any claim of default on their part
for moneys due plaintiffs under the contract. A
decree was entered granting plaintiffs the relief
prayed for in their bill of complaint, whereupon the

Dutmers filed a petition for relief under the moratorium act, Act No. 122, Pub. Acts 1933, as amended by Act No. 4, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 14988–1 *et seq.*, Stat. Ann. § 27.2000 *et seq.*). The decree entered by the trial court ordered a sale of the premises to satisfy the sum remaining unpaid on the contract and provided for a personal decree against all of the defendants for deficiency. Defendants appeal.

1. Defendants claim the trial court erred in granting plaintiffs the relief asked because plaintiffs breached the contract in several material ways before defendants Dutmer refused to make further payments, which breaches on the part of plaintiffs justified them in refusing to go on with the contract; that the action of plaintiffs caused the default of defendants about which plaintiffs now complain. The trial judge held otherwise, and in this we think he was correct.

2. Defendants contend there was a breach on plaintiffs' part in not commencing title-clearing proceedings within two weeks and correcting the abstract within four months from the date of the contract. The abstract is in the same condition it was June 12, 1928. Defendants had a right to commence proceedings if the plaintiffs failed to do so within the specified period and $300 was retained by the defendants from the purchase price for the expense of such title-clearing proceedings. Defendants are in no position to complain. *Chappus* v. *Lucke,* 246 Mich. 272. The contract provided a specific remedy for failure upon the part of plaintiffs to begin proceedings to quiet title. The defendants Dutmer did not regard the failure of plaintiffs to institute proceedings to clear the title of sufficient importance to commence proceedings themselves for which they

had retained the $300 and did not raise the question until after the lapse of four years.

3. Defendants claim plaintiffs violated the contract when they were asked by defendants' attorney at the request of defendants to release a lot in the subdivision in neglecting and refusing to comply with the request. The letter of defendants' attorney asked plaintiffs when they would furnish a deed covering the lot and stated "we are prepared to pay, and herewith tender you the correct amount of $99.31 (1½ times the acreage cost). You may forward deed and we will forward check for payment." The land contract provided that plaintiffs would "when so requested, release from under this contract and any conveyance therefor, on payment to seller, their heirs or assigns, one and one-half the acreage value of each lot or lots released or deeded." The letter above quoted was the only written communication between the parties in relation to this release. Plaintiffs did not answer the letter. Both the land contract and the supplemental agreement stated that any lot would be released if certain things were done. Payment was a condition of release. It cannot be contended the communication of the Dutmers' attorney to plaintiffs was more than an offer to comply with the conditions of the land contract. The claimed verbal demand of defendants for its release was not accompanied by payment, offer to pay, or tender. Under some circumstances, a check has been held to be sufficient tender. *Murphy v. Frank P. Miller Corp.,* 229 Mich. 162; *Browning v. Crouse,* 40 Mich. 339. But the principle of these cases is not applicable to the situation here. The bill of complaint was filed March 8, 1933. The letter of defendants' attorney above referred to was not written until June 27, 1934.

4. It is plaintiffs' claim that prior to this letter defendants had breached their contract in not making payments, and, if so, they could not be heard to complain. The plaintiffs at that time had by reason of defendants' default instituted foreclosure proceedings.

5. The letter of defendants' attorney of April 3, 1933, states the lots were assessed in 1930. Plaintiff Lutz testified otherwise. He said these drain taxes were not due until November of 1932 or 1933. The trial court found in accordance with plaintiffs' contention. We see no reason to modify that finding.

6. Whether or not there was a conspiracy to freeze out defendants is a question of fact. The trial court found for plaintiffs upon this disputed question. We are inclined to agree with the trial court. There was ample testimony to support the findings of the trial court in relation to the above matters. The trial court in entering its decree for plaintiffs for foreclosure of the land contract found against defendants Dutmer on their cross-bill and thus disposed of it.

7. Defendants claim the trial court erred in entering a decree for deficiency against all of the defendants. There is a wide difference between a land contract and a mortgage. *Cady* v. *Taggart,* 223 Mich. 191; *Jackson* v. *West,* 224 Mich. 578; *Curry* v. *Curry,* 213 Mich. 309; *Hooper* v. *Van Husan,* 105 Mich. 592; *Craig* v. *Black,* 249 Mich. 485; *Genyk* v. *Nagrich,* 255 Mich. 189. There is a plain distinction between the lien of the grantor after a conveyance and the interest of a vendor before conveyance. The former is not a legal estate but is a mere equitable charge on the land. It is not even, in strictness, an equitable lien until declared and established by judicial decree. *Jones* v. *Bowling,* 117 Mich. 288;

3 Pomeroy's Equity Jurisprudence (3d Ed.), p. 2529, §·1260; *Craig* v. *Black, supra.*

"The vendee gets the equitable title, but the legal title still remains in the vendor, and is held as security for the payment of the purchase price." *Hooper* v. *Van Husan, supra.*

"The rights of mortgagor and mortgagee differ from those of vendor and vendee. The mortgagor holds the fee; the mortgagee has a lien. The vendor holds the fee; the vendee had an equitable interest." *Cady* v. *Taggart, supra.*

"The foreclosure of mortgages is one of the ancient equitable remedies. Its object is simply to enforce a lien upon lands by making it absolute unless redeemed." *Michigan Ins. Co.* v. *Brown,* 11 Mich. 265.

"Under the original equitable jurisdiction there never was any power to make a personal decree against even the mortgagor himself." *Johnson* v. *Shepard,* 35 Mich. 115.

The power to render a deficiency decree in mortgage foreclosure cases is purely statutory. It is a substitution for a legal action and must be governed by the rules which would apply at law. *Michigan Ins. Co.* v. *Brown, supra; McCrickett* v. *Wilson,* 50 Mich. 513; *Vaughan* v. *Black,* 63 Mich. 215; *Winsor* v. *Ludington,* 77 Mich. 215; *Kelly* v. *Gaukler,* 164 Mich. 519; *Kollen* v. *Sooy,* 172 Mich. 214; *Union Trust Co.* v. *Detroit Trust Co.,* 243 Mich. 451; *Janower* v. *F. M. Sibley Lumber Co.,* 245 Mich. 571; *Bleakley* v. *Oakwayne Farms Co.,* 265 Mich. 268; *Wurzer* v. *Geraldine,* 268 Mich. 286. To hold that the rules of mortgage foreclosure apply to the foreclosure of a vendor's lien "is a direct reversal of all rules, and in violation of every equitable prin-

ciple and analogy." *Fitzhugh* v. *Maxwell*, 34 Mich. 138. The only principle which allows the vendor to sue for his money and at the same time seek security against the land is the one which recognizes the analogy to a vendor's lien in cases where the legal title has been conveyed. The title of the vendee, whether legal or equitable, can only be divested by a sale. *Fitzhugh* v. *Maxwell, supra*.

"A suit on a mortgage in England is not a suit to collect money, but one to get land, whereas a bill by a vendor is always to get his money, and the lien on the land is only a means of collecting it in whole or in part." *Fitzhugh* v. *Maxwell, supra.*

"The claim of the vendor is but an ordinary money debt, secured by the contract." *Walker* v. *Casgrain,* 101 Mich. 604.

"It is well settled that specific performance is granted in favor of the vendor of land as freely as in favor of the vendee, though the relief actually obtained by him is the recovery of money, the purchase price." *Pearson* v. *Gardner,* 202 Mich. 360 (L. R. A. 1918 F, 384).

8. One of the bases of the right to specific performance is mutuality of remedies. *Bame* v. *Bame,* 250 Mich. 515; *Harmon* v. *Muirhead,* 247 Mich. 614; *Cole* v. *Cole Realty Co.,* 169 Mich. 347; *Matthews* v. *Plymouth Community Hotel Co.,* 265 Mich. 309.

"It is well established that in a case in which specific performance is otherwise a proper remedy the vendor may obtain specific performance of a contract for the sale of realty, the vendee being ordered to accept the deed and to pay the purchase price, or if he refuses to accept a conveyance and pay the purchase price, the land may be ordered sold to satisfy the vendor's so-called 'lien,' and execution issue for any unsatisfied balance of the purchase

money remaining after the sale of the land. In such case the right does not depend upon the inadequacy of legal remedy." 58 C. J. pp. 1029–1031.

"Where land, or any estate therein, is the subject-matter of the agreement, the inadequacy of the legal remedy is well settled, and the equitable jurisdiction is firmly established. Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable,—when it possesses none of those features which, in ordinary language, influence the discretion of the court,—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach." 4 Pomeroy's Equity Jurisprudence (3d Ed.), p. 2761, § 1402.

"A vendor, as well as a vendee, is entitled to specific performance. If the defendant had made large payments, the complainant would be entitled, upon failure to make further payments when due, to file his bill for specific performance, and in the nature of a foreclosure bill, and in such case would be entitled to a sale of the land and decree for deficiency." *Loveridge* v. *Shurtz,* 111 Mich. 618.

"It is well settled, with scarcely any dissent, that specific performance is granted in favor of a vendor of land as freely as in favor of a vendee, though the relief actually obtained by him is usually only a recovery of money—the purchase price." 6 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1261, § 747.

Relief by specific performance is available to a vendor as well as to a vendee on the ground of mutuality. *Pearson* v. *Gardner, supra.* It is never a remedy of right but rests in the sound discretion of the court. *St. Pierre* v. *Masson,* 243 Mich. 60; *Keys* v. *Hopper,* 270 Mich. 504. The rule permitting specific performance of a land contract by the vendor "is more satisfactorily accounted for by reference

to the doctrine of mutuality; *viz.*, that where an equitable remedial right in the vendee is recognized, a corresponding remedial right should be admitted in favor of the vendor." 6 Pomeroy's Equity Jurisprudence (3d Ed.), p. 1261, § 747. An assignee may be held liable on a land contract by reason of an express assumption in accordance with the terms of the contract assigned. 6 C. J. S. pp. 1162, 1163. A suit at law formerly could not be prosecuted by the vendor against the vendee's assignee who assumed and agreed to pay for the reason that no privity of contract existed between the vendor and the vendee's assignee. *Corbus* v. *Teed,* 69 Ill. 205; *Tapert* v. *Schultz,* 252 Mich. 39; *Fender* v. *Feighner,* 265 Mich. 536. This rule was changed by Act No. 296, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 14063–1 *et seq.,* Stat. Ann. 1938 Cum. Supp. § 26.1231 *et seq.*). A bill for specific performance is in the nature of a bill of foreclosure and when the rights under the contract are determined the court will have full power to provide for the protection of all equities and to order a sale for the satisfaction of moneys due, if necessary. *Day* v. *Cole,* 56 Mich. 294; *Field* v. *Ashley,* 79 Mich. 231.

"A bill filed strictly for specific performance usually asks a decree for the whole consideration, and the vendor, complainant, if he would have the entire consideration awarded to him by the decree, must be able to perform the contract. Where the consideration sought is the payment of money only, this proceeding amounts substantially to a foreclosure, as it gives the vendor a decree for money due by the terms of the contract, and, by sale of the equitable title of the vendee, subjects the premises to the payment of the same. This proceeding is fa-

vored, as it enforces no forfeiture." *Gray* v. *Hill,*
105 Mich. 189.

See, also, *Cady* v. *Taggart, supra.*

The assignee of the purchaser under a land con-
tract is entitled to the same rights as the original
purchaser, his assignor. *Howell* v. *Medler,* 41 Mich.
641. Not only does the assignee of the purchaser
acquire the rights of the assignor, but also all rem-
edies which were open to the assignor for the en-
forcement of the obligation are available to the as-
signee. 6 C. J. S. p. 1157. The vendor in a land
contract ordinarily has neither possession of the
land, the purchase money, nor complete title to the
land, because while the contract is in force there is
outstanding against it the purchaser's right, upon
performance of the contract, to have title to the land.
Specific performance is ordinarily granted to plain-
tiff only when defendant, if free from fraud or
other personal bar, could have specific performance
against plaintiff. Specific performance will be re-
fused unless there is mutuality of remedy to the
parties. The right of an assignee of a purchaser to
compel specific performance of a contract for con-
veyance is everywhere recognized. Upon assign-
ment by the purchaser, the assignee steps into the
shoes of the purchaser. If the assignee of the pur-
chaser has a right to enforce specific performance
against the vendor, the vendor should have a cor-
responding right to enforce specific performance
against the assignee of the purchaser. Only thus is
mutuality maintained.

The provisions of Act No. 296, Pub. Acts 1937, are
"applicable to contracts made prior to its enactment
as well as to those made subsequent thereto, unless
such construction be held to be unconstitutional."
Act No. 296, § 5, Pub. Acts 1937.

If this provision of the statute is unconstitutional, it is because it impairs the obligation of contract, in violation of the Constitution of the United States, art. 1, § 10, and of the Constitution of Michigan, 1908, art. 2, § 9.

"It is within the power of a legislature to change the formalities of legal procedure." *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226, 13 Am. St. Rep. 438).

"Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." *Sturges* v. *Crowninshield,* 4 Wheat. (17 U. S.) 122, 200.

"The rule seems to be that in modes of proceeding and of forms to enforce the contract the legislature has the control, and may enlarge, limit, or alter them, provided that it does not deny a remedy, or so embarrass it with conditions and restrictions as seriously to impair the value of the right." *Tennessee* v. *Sneed,* 96 U. S. 69, 74; *State Savings Bank of Detroit* v. *Matthews,* 123 Mich. 56.

"A statute is void as impairing the obligation of a contract if it takes away all remedy for the enforcement of the contract, or if it leaves no substantial remedy therefor. Within these limitations, however, the legislature may alter or abolish particular remedies, and may substitute one remedy for another." 12 C. J. pp. 1068, 1069.

Act No. 296, Pub. Acts 1937, is, so far as applicable here, constitutional, being remedial in character.

The vendor may in equity call upon the assignee of the purchaser for the payment of purchase money and have the land sold in satisfaction of the purchase

price, thus eliminating the equitable title of the assignee of the purchaser. Both the purchaser and his assignee are in such proceedings proper parties defendant and the court may and should, if the assignee of the purchaser has assumed and agreed to pay, adjust the equities between the parties, avoid a multiplicity of suits, and retain jurisdiction to grant complete relief.

The right to a deficiency decree does not rest upon any analogy to the statute governing deficiency decrees in mortgage foreclosure cases, but arises from the nature of a suit for specific performance by the vendor against the vendee. The decree rendered is for the amount due and to protect the vendee the decree provides for a sale of his equitable interest in the land and an application of the proceeds of such sale to the amount due on the vendors claim.

Formerly, if the vendor was relegated to his action at law, he could maintain that action only against the vendee under the original contract, and, if he recovered judgment against such vendee the vendee might maintain suit against the assignee of the vendee under the contract by which such assignee had assumed and agreed to pay. It is precisely to bring all the parties before the court to settle all this litigation in one suit and afford the plaintiffs a complete and adequate remedy which they cannot have in a court of law that the proceeding is instituted for specific performance in a court of chancery. *Powers* v. *Fisher,* 279 Mich. 442; Act No. 296, Pub. Acts 1937.

The liability of the assignee of a land contract who has assumed and agreed to pay the balance of the purchase price cannot be extended beyond the limits of his contract of assumption. *Lowrie & Robinson Lumber Co.* v. *Rubin,* 245 Mich. 224.

9. The land contract in question does not contain an acceleration clause. The trial court in its decree of August 26, 1935, gave defendants until September 24, 1935, to pay the amount of past due payments, $1,701.50, with interest, and in default of such payment ordered a sale of the premises to satisfy the entire purchase price, both due and to grow due, amounting to $30,175, and for a personal decree for deficiency against all of the defendants in case the property sold for less than the amount due together with the expenses of sale. The trial court had no authority to decree the entire amount due in the absence of an acceleration clause in the contract. *Cady* v. *Taggart, supra; Brown* v. *Mudge,* 242 Mich. 324.

10. The bill of complaint was filed against the Dutmers individually and against the Dutmers and Kendalls as copartners in the Home Land Lake Company. The decree treats the parties as partners. It has long been the law in this State that a wife may not be in partnership with her husband. *Bassett* v. *Shepardson,* 52 Mich. 3; *Artman* v. *Ferguson,* 73 Mich. 146 (2 L. R. A. 343, 16 Am. St. Rep. 572) ; *Tomkovich* v. *Mistevich,* 222 Mich. 425; *Lesher* v. *Brosteau,* 238 Mich. 189; *Farmers Co-Operative Creamery Co.* v. *Huhn,* 241 Mich. 23; *Kuntz* v. *Kuntz,* 244 Mich. 78.

11. The trial court found the assignment in question was sufficient to convey the interest of the Dutmers in the property to the Kendalls. This assignment is not in the record. A person may not convey to himself alone, but if he conveys to himself and others the intention of the grantor will ordinarily prevail to prevent the grantees other than himself from taking the entire estate. *Wright* v. *Knapp,*

183 Mich. 656; *Michigan State Bank of Eaton Rapids* v. *Kern,* 189 Mich. 467; 18 C. J. p. 159.

In *Cameron* v. *Steves,* 9 N. B. 141, it is said:

"In 1 *Sheppard's Touchstone* (a book of very high authority) at *page* 82, it is laid down: 'If a deed be made to one that is incapable, and to others that are capable, in this case it shall enure only to him that is capable. (And if they were to be *joint-tenants,* the person who is capable shall take the whole; but if they were to be tenants in common, he shall have only his particular share.)' "

Clearly, the assignors did not intend to convey the whole estate to the parties named other than themselves. Their purpose was to remain owners of some interest in the premises. To construe this assignment by, in effect, striking their names from it except as grantors, would be to enlarge its legal effect contrary to the intention of the parties. *Green* v. *Cannady,* 77 S. C. 193 (57 S. E. 832). All grants or devises of land to two or more persons, with exceptions not here involved, are construed to create estates in common and not in joint tenancy unless expressly so declared. 3 Comp. Laws 1929, § 12964 (Stat. Ann. § 26.44). The Dutmers and Kendalls held their interests in the property as tenants in common under the rule established by the authorities above cited. Tenants in common hold by several and distinct titles, with unity of possession. As between themselves, their interests are several. There is no unity of title. Each owner is considered as solely and severally seized of his share. 62 C. J. p. 409.

12. Before the assignment, Mrs. Dutmer could not be held liable for any deficiency, because the separate estate of a married woman is not liable for payment of a note executed by her and her husband

for the purchase price of land deeded to them jointly because the wife has no such interest in an estate by entirety as affords a valid consideration for the note. *Doane* v. *Feather's Estate,* 119 Mich. 691; *Cady* v. *Taggart, supra.* By the assignment, Mrs. Dutmer acquired an interest as a tenant in common and became bound by the land contract and supplementary agreement to carry out its terms. To the extent of her interest, which was a part of her sole and separate estate as a tenant in common, she became liable in case of a deficiency, which would be for one-fourth of the same, as her interest was in that proportion to the whole, in the absence of anything to the contrary appearing. *Campau* v. *Campau,* 44 Mich. 31; *Hill* v. *Reiner,* 167 Mich. 400; 62 C. J. p. 420.

13. Defendants urge that the trial court erred in refusing to decree that the sale of the property on foreclosure, if one be had, should except the streets, parks and paths dedicated to the sole and only use of the lot owners in common as private ways and private parks, pursuant to a so-called dedication contained in the plat of Bonnie Brae Country Club subdivision. The trial record is unsatisfactory on this point. The plat was not introduced in evidence. There is the conflicting testimony of Mr. Lutz who said neither he nor his wife signed the plat, and Mrs. Dutmer who testified the Lutzes did join in the dedication which is required by 3 Comp. Laws 1929, § 13210 (Stat. Ann. § 26.443). The trial court evidently believed Mr. Lutz. We are confined to the record on appeal. *Karsten* v. *LaHuis,* 256 Mich. 524; *McDonald* v. *Ford Motor Co.,* 268 Mich. 39; *Anderson* v. *Jersey Creamery Co.,* 278 Mich. 396. We are not inclined to approve the chancellor's decree in relation to these parts of the plat dedicated either

to the public or to the users of the plat.    The rights of others not parties to this proceeding may be involved.    There should be further proceedings to ascertain the facts in relation to the dedication, or claimed dedication, and the rights of the respective lot owners in relation thereto.

14.  ʻGranting or refusing relief under the moratorium act is largely a matter of discretion with the trial judge, and such decree will be sustained unless an abuse thereof is affirmatively shown.  *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich. 644; *Union Guardian Trust Co.* v. *Harry & Max Dunitz, Inc.,* 273 Mich. 607; *Youngs* v. *Burleson,* 274 Mich. 132; *Massachusetts Mutual Life Ins. Co.* v. *Kovinsky,* 277 Mich. 163.   There is nothing to indicate the trial court abused his discretion.

Decree of the trial court is set aside, with costs, and decree will be entered herein in accordance with this opinion and the cause remanded for further proceedings as suggested therein.

BUSHNELL, SHARPE, CHANDLER, and MCALLISTER, JJ., concurred with POTTER, J.

WIEST, C. J. (*concurring*).   I concur in the result.
The rule governing specific performance or foreclosure of land contracts is fully set forth in *Barnard* v. *Huff,* 252 Mich. 258 (77 A. L. R. 259).

NORTH, J., concurred with WIEST, C. J.   BUTZEL, J., took no part in this decision.