**In re Charles H. BRITTON, Debtor.**

**Park CHAPMAN and Eva Chapman, Plaintiff,**

**v.**

**Charles H. BRITTON, Defendant.**

**Bankruptcy No. 83–00208.**
**Adv. No. 83–0124.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Oct. 17, 1984.

Geoffrey L. Neithercut, Flint, Mich., for Genesee Merchants Bank & Trust Co.

Richard Goldstein, Flint, Mich., for conservator.

Larry Sharp, Farmington Hills, Mich., for debtor/defendant.

Gary J. Piggott, Flushing, Mich., for plaintiff.

## MEMORANDUM OPINION

ARTHUR J. SPECTOR, Bankruptcy Judge.

On August 31, 1981 the Plaintiffs, Park and Eva Chapman, executed a land contract with the Defendant debtor, Charles H. Britton, by which the debtor purchased a 40 acre horse ranch located in Lennon, Michigan. The total purchase price was $145,000; Britton paid a $20,000 cash down payment leaving a balance of $125,000 on the contract. Interest on the contract is 8% annually while the vendee is not in default and 9% at any time while he is in default. The Defendant made only three monthly payments of $1,250.00 each before defaulting. In September, 1982, the Plaintiffs instituted a land contract forfeiture action in state court; debtor subsequently commenced this Chapter 11 proceeding on March 7, 1983.

This matter is before the Court pursuant to the Plaintiffs' motion to require the debtor to assume or reject the land contract under to 11 U.S.C. § 365. They argue that under Michigan law, land contracts are executory in nature and are thus within the purview of § 365. The Defendant, also citing Michigan law, contends that the relationship between vendor and vendee is analogous to that of mortgagee and mortgagor, and that the vendor in a land contract is vested with title held as an enforceable security interest for the payment of the purchase price; and therefore, the vendor has a secured claim in the bankruptcy estate and cannot compel assumption or rejection of the land contract. Thus, the pleadings of the parties raise the following issue: are land contracts in Michigan executory contracts for purposes of § 365 of the Bankruptcy Code?

■ The initial inquiry to be made by this Court is the nature of the relationship between land contract vendors and vendees. Unless there is a clearly stated federal interest, this is a matter to be determined by the law of the state in which the relationship arises. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Madeline Nursing Homes*, 694 F.2d 433 (6th Cir.1982); *In re Patch Graphics*, 32 B.R. 373, 11 B.C.D. 889 (Bankr.W.D.Wis.1983). Neither the courts nor the legislature in this state have clearly enunciated whether land contract vendors are to be treated as parties to unsecured, executory contracts or whether they should be regarded as enjoying secured status. In support of the former

proposition, the Plaintiffs cite *Lutz v. Dutmer,* 286 Mich. 467, 282 N.W. 431 (1938) wherein the Supreme Court of Michigan stated that

"... there is a plain distinction between the lien of the grantor after a conveyance and the interest of a vendor before conveyance. The former is not a legal estate but is a mere equitable charge on the land. It is not even, in strictness, an equitable lien until declared and established by judicial decree."

*Id.,* 286 Mich. at 480, 282 N.W. 431. The Plaintiffs also point to a rule of the Michigan District Court, entitled "Summary Proceedings; Executory Contracts". This provision describes the procedures by which the vendor of a land contract may recover possession of the premises from a defaulting vendee. DCR 755. No analogous remedy is provided for the mortgagee attempting to recover possession from a defaulting mortgagor.

Neither *Lutz v. Dutmer* nor the court rule cited are persuasive on this issue. First, the *Lutz* opinion itself contains a collection of earlier Michigan cases, some of which contradict the Plaintiffs' argument. Of particular significance is *Hooper v. Van Husan,* 105 Mich. 592, 63 N.W. 522 (1895) where the Court held that a vendor holds legal title as security for the payment of the contract price. This principle has more recently been affirmed by the Supreme Court in *Barker v. Klingler,* 302 Mich. 282, 4 N.W.2d 596 (1942):

"It is well settled in this state that the vendee in a land contract is vested with the equitable title in the land, and that the *legal title* remains in the vendor and *is held as security for the payment of the purchase price* of the land, upon the payment of which the vendee is entitled to a conveyance of the legal title."

*Id.,* 302 Mich. at 288, 4 N.W.2d 596 (emphasis added). *See also Gilford v. Watkins,* 342 Mich. 632, 70 N.W.2d 695 (1955).

Second, while the district court rule referred to above does create a remedy for vendors different than those available to mortgagees, this alone does not prove that the nature of the status held by vendor and mortgagee are different in all contexts. DCR 755 became effective in 1980. It is a supplement to the remedies provided in DCR 754, entitled "Summary Proceedings to Recover Possession of Premises". The staff comments to DCR 755 indicate that it was enacted because it was recognized that the problems of vendors recovering possession from vendees are different from those of landlords recovering from tenants. DCR 755 appears designed only to distinguish land contracts from leases for purposes of obtaining possession.

In short, the better view is that in Michigan the vendor of real estate under a land contract retains title as a lien on the property to secure payment of the purchase price. Indeed, the Plaintiffs admitted as much at the hearing on this motion. Counsel for the Plaintiffs agreed that they had a lien as defined by § 101(28) of the Bankruptcy Code: " 'Lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." Michigan court definitions of the term are essentially the same. *See, e.g., Cheff v. Haan,* 269 Mich. 593, 598, 257 N.W. 894 (1934). ("A lien ... is a right or claim against some interest in property created by law as an incident of the contract.") The Plaintiffs also admitted that their lien was a "security interest" as defined in § 101(37) of the Bankruptcy Code.

Once the interest held by the vendors has been defined under state law, this Court must decide how this type of security interest is dealt with by the Bankruptcy Code. The leading case discussing this matter is *In re Booth,* 19 B.R. 53, 9 C.B.C.2d 65 (Bankr.D.Utah 1982). There the debtor was a dealer and broker of real estate involved in a Chapter 11 proceeding. A party which had sold certain property to the debtor under a Utah land contract moved to compel assumption or rejection. In a thorough opinion, the bankruptcy court examined the legislative intent and policies underlying the enactment of § 365. It was the court's conclusion that treating a debtor vendee's land contract as a se-

cured debt rather than as an executory contract was intended by Congress and was the classification fairest to both vendor and vendee. Other bankruptcy courts have concurred with this analysis and held that the lien created by a land contract precludes classification of the contract as executory. *See In re Flores*, 32 B.R. 455 (Bankr.S.D.Texas 1983); *In re Cox*, 28 B.R. 588, 10 B.C.D. 481 (Bankr.D.Idaho 1983); *In re Gladding Corp.*, 22 B.R. 632 (Bankr. D.Mass.1982); and *In re Patch Graphics, supra*. But see *In re Roman Crest Fruit, Inc.*, 35 B.R. 939 (Bankr.S.D.N.Y.1983). The Plaintiffs' attempts to distinguish *Booth* on its facts are unconvincing; the character of a land contract remains the same regardless of whether the vendee is a commercial broker or an inexperienced individual.

The land contract is not an executory contract under § 365; therefore the motion of the Plaintiffs, Park and Eva Chapman, to compel the Defendant, Charles Britton, to assume or reject the agreement is DENIED. Upon presentation, an appropriate order to this effect will be entered.